Lester Steven CHAMBERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 59140.

Court of Criminal Appeals of Texas,
Panel No. 1.

July 16, 1980.

D. Brian Blessing, Dallas, for appellant.

Henry Wade, Dist. Atty., Steve Wilensky and John William Booth, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and DALLY, JJ.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of unlawfully obtaining from a registered pharmacist a controlled substance, to-wit: phenmetrazine, by the use of a false and forged prescription. The punishment, enhanced by two prior felony convictions, is imprisonment for life.

The appellant contends that: the punishment assessed is cruel and unusual; evidence of an extraneous offense was erroneously admitted; evidence of an in-court identification was erroneously admitted; and the evidence is insufficient to support the verdict.

Geraldine O'Brien, a registered pharmacist, testified that appellant entered the pharmacy where she worked at about 9:00 a. m. on March 11, 1976. He was dressed in a light blue work shirt and blue pants. He presented her with a prescription for sixty 75-milligram tablets of Preludin (phenmetrazine). The prescription purported to be for William Bailey. The appellant stated he did not have his driver's license, but gave her a social security number. After O'Brien filled the prescription, the appellant discovered he did not have enough money to pay for the entire prescription. O'Brien allowed him to pay for that portion he could afford, forty-five tablets, and told him he could return that evening to purchase the remaining fifteen tablets. She unsuccessfully tried to reach the prescribing doctor that day to verify the prescription. When appellant returned that evening, at about 6:45, she filled the rest of the prescription. Appellant paid for it with what appeared to be a twenty-dollar bill which O'Brien later discovered was a one dollar bill changed to make it appear to be a twenty-dollar bill. She called the police the following morning. The prescription purported to be written by Dr. Tom E. Kelly, M. D. Dr. Kelly, when reached, confirmed that he had neither written nor authorized

the prescription. He testified that appellant was not his patient, nor did he have a patient named William Bailey.

The appellant did not testify. His father, Jerome Chambers, and Geraldine Hatman, both testified that the appellant remained with them in Hatman's apartment from around 7:30 to around 11:30 on the morning of March 11, 1976, except for a three-minute visit to a neighbor. The neighbor, Ron Neff, testified he heard appellant playing a guitar "all morning long."

■ Appellant first contends, in four grounds of error, that the punishment assessed against him is unconstitutional. He argues that to automatically impose a sentence of life imprisonment because this is his third felony conviction violates the ban against cruel and unusual punishment. We find this contention to be without merit. *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

The appellant next contends that the trial court erred in admitting, over objection, testimony offered by the state in rebuttal that appellant committed the extraneous offense of obtaining phenmetrazine and biphetamine from a registered pharmacist by use of forged prescriptions. Wendell Warren, a registered pharmacist, positively identified appellant as the man who, at 8:00 p. m. on March 11, 1976, came into his pharmacy in Richardson, Texas, to fill two prescriptions. He stated appellant was wearing a blue-gray shirt. The prescriptions, which purported to be written by Dr. Tom E. Kelly, M. D. for Martha and Walter Driggs, were for sixty 75-milligram tablets of Preludin (phenmetrazine), and for thirty 20-milligram capsules of biphetamine. Warren testified that these were the strongest dosages in which these medications are available. Warren filled the prescription for biphetamine, and filled half the prescription of Preludin, suggesting that appellant return the following day for the other half. Warren testified that these two drugs are usually prescribed for people with weight problems and that appellant did not appear to have a weight problem. Becoming suspicious about the prescriptions, Warren called the doctor to verify that he had made them. The doctor informed him that the prescriptions were forgeries and Warren alerted the police. The next day, when appellant returned to Warren's pharmacy, he was arrested.

■ Evidence of unrelated offenses committed by a defendant is generally not admissible, since a defendant may not be tried for some collateral crime or for being a criminal generally. *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972). There is an exception to this general rule where evidence of the commission of other offenses by the accused is introduced to establish the identity of the person or crime, intent, motive, system, or as part of the res gestae. *Albrecht v. State,* supra.

■ The State argues that the testimony about the extraneous offense in this case was admissible in rebuttal because it was offered to establish the issue of appellant's identity in the offense for which he was tried. Evidence that would also prove a separate offense is admissible when offered on the issue of identity only (1) if the identity is a controverted issue and (2) if there are distinguishing characteristics common to both the extraneous offense and the offense for which the defendant is on trial. *Cameron v. State,* 530 S.W.2d 841 (Tex.Cr.App.1975). See *Ransom v. State,* 503 S.W.2d 810 (Tex.Cr.App.1974); *Mitchell v. State,* 503 S.W.2d 562 (Tex.Cr.App.1974); *Cobb v. State,* 503 S.W.2d 249 (Tex.Cr.App.1973).

■ In the present case, although appellant did not testify, he offered the defense of alibi through defense witnesses, thereby making identity a controverted issue. *Collins v. State,* 577 S.W.2d 236 (Tex.Cr.App.1979). Therefore, the evidence concerning the extraneous offense is admissible provided that there are distinguishing characteristics common to both the extraneous offense and the offense for which appellant was on trial. The common characteristics may be proximity in time or place, or the common mode of the commission of the act. *Collins v. State,* supra; *Ransom v. State,* supra.

In this case, both acquisitions of controlled substances occurred on the same day. Appellant was positively identified as the actor in each instance, and was described as wearing a blue work shirt, and a blue-gray shirt. Each time, the actor used a forged prescription purportedly written by Dr. Kelly which specified sixty 75-milligram tablets of Preludin. In each instance, when necessary because of his lack of money or the pharmacist's low supplies, the actor filled part of the prescription and returned later to obtain the rest of the medicine.

■ We conclude that there is sufficient similarity shown between the offenses to render the evidence of the extraneous offense admissible on the issue of identity. See *Collins v. State*, supra; *Buckner v. State*, 571 S.W.2d 519 (Tex.Cr.App.1978); *Ransom v. State*, supra. Cf. *Cameron v. State*, supra; *Hines v. State*, 571 S.W.2d 322 (Tex.Cr.App.1978); *Ford v. State*, 484 S.W.2d 727 (Tex.Cr.App.1972). Moreover, we also conclude that the testimony was admissible to show guilty knowledge, intent, and design. *Albrecht v. State*, supra; *Etchieson v. State*, 574 S.W.2d 753 (Tex.Cr. App.1978), cert. denied, 440 U.S. 936, 99 S.Ct. 1282, 59 L.Ed.2d 495 (1979); *Tarpley v. State*, 565 S.W.2d 525 (Tex.Cr.App.1978).

The appellant also argues that the trial court erroneously overruled his objection to the in-court identification testimony by O'Brien. He argues that this identification was tainted by remarks made to O'Brien after her identification of appellant in a pretrial photo spread.

At a pretrial hearing on appellant's motion to exclude her identification testimony O'Brien testified that she had seen appellant twice, on two successive days, in her pharmacy. He remained in the pharmacy for ten minutes during the first visit. O'Brien stated there was ample light in the pharmacy, and that she viewed appellant from a distance of approximately two and a half to three feet, the width of the counter. Her identification of appellant at the pretrial hearing was positive and unequivocal.

O'Brien testified that on March 18, 1976, a week after the offense, Officers Poss and Graves of the Dallas Police Department showed her a set of photographs and asked her to identify the person she had reported, if she recognized him. O'Brien stated that these were color photographs of white men of approximately the same age and general physical description. She dealt them out slowly, stopped at the photograph of appellant, and positively identified him as the person she had reported. On cross-examination, O'Brien stated that after she had identified appellant's photograph, she was told that he had a long criminal record. On July 27, 1976, O'Brien viewed a lineup of seven white males of approximately the same age and physical description, and she identified the appellant again. On cross-examination, she stated that on the day of the lineup, before her identification, she was informed by the assistant district attorney that the appellant had a long criminal record. O'Brien testified that her in-court identification of the appellant was based on her original encounter with him, not on her subsequent identifications, or on seeing him at the examining trial.

■ The trial court ruled that O'Brien's testimony would be admitted. He found that her in-court identification of appellant was based solely on having viewed him at the time of the offense, and was not influenced by the photo spread, the lineup, the examining trial, or the remarks about appellant's long criminal record. We conclude that the evidence supports these findings. Even if the remarks made about appellant's criminal record were improperly suggestive, O'Brien's testimony was admissible because her identification of appellant was independent of the pretrial photographic identification procedure and lineup. See *Smith v. State*, 595 S.W.2d 120 (Tex.Cr. App.1980); *Komurke v. State*, 562 S.W.2d 230 (Tex.Cr.App.1978); *Bermudez v. State*, 533 S.W.2d 806 (Tex.Cr.App.1976). Appellant's contention is overruled.

■ Finally, appellant says that the evidence is insufficient to support the verdict, because the State failed to prove he had

knowledge that the prescription he presented was forged. We find this contention to be without merit.

The prescription appellant presented to O'Brien appeared to be for "William Bailey." When O'Brien asked the appellant for identification, he stated that his driver's license was in the car and his friend was driving the car around the block. The prescription purported to be signed by Dr. Kelly. Dr. Kelly testified that he had neither signed nor authorized the prescription, that appellant was not his patient, and that he had no patient named William Bailey. Appellant paid for part of the prescribed drugs with a counterfeit twenty dollar bill. On the evening of the day of the offense, appellant presented two forged prescriptions, apparently for Martha and Walter Driggs, to another pharmacist. These prescriptions also purported to be written by Dr. Kelly. One of the prescriptions was for precisely the same number and strength of phenmetrazine tablets as the prescription earlier presented to O'Brien. This evidence is sufficient to show that appellant knew the prescription he presented to O'Brien was forged.

The judgment is affirmed.