**Joel R. COX, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–87–01059–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 8, 1988.

Ken J. McLean, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, for appellee.

Before WARREN, JACK SMITH and DUGGAN, JJ.

## OPINION

WARREN, Justice.

A jury convicted appellant of murder and assessed punishment at life in prison.

In his first of six points of error, appellant complains that the trial court erred in admitting, over objection, exculpatory statements made by appellant while "in custody."

The record shows that appellant called the Harris County Sheriff's Office on August 16, 1987 and reported that his infant son, Steven Cox, had been abducted from appellant's apartment by a white woman named Linda. Several police officers from the Harris County Sheriff's Office arrived at appellant's apartment and interviewed the appellant in connection with the alleged abduction of Steven. At this time, appellant appeared to be an extremely agitated and concerned father of an abducted infant. Appellant rode with one of the officers as they drove around the immediate area of the apartments looking for Linda and Steven. The search was futile.

The officers then requested that appellant accompany them to the Harris County Sheriff's substation so that they could obtain additional information about the abduction. Specifically, the investigators questioned appellant about Linda's name, her physical description, and the details of her contact with the appellant and Steven.

Appellant told the police that he did not know Linda's last name, that she was white, and that she had come to his apartment to buy drugs. He told them that he had met Linda on the street at some time in the past, and sold her drugs on a previous occasion, but that he refused to sell her any drugs when she showed up at his apartment on August 16. He further told them that he left Steven with Linda in the front room of the apartment while he made a phone call and that when he returned to the room, both Linda and Steven were gone.

In the course of the investigation, and partly because they believed the appellant's story to be highly improbable, one of the officers investigating the alleged abduction checked on appellant's prior criminal record. This check disclosed a conviction for injury to a child.

At the hearing on appellant's motion to suppress, the officers testified that they felt they needed some verification of the truthfulness of the appellant's abduction story to justify the continuation of the investigation, and that they requested that appellant submit to a polygraph examination.

Appellant agreed, and accompanied two officers to the main office of the sheriff's department in downtown Houston, where he was to be given the polygraph examination. While waiting for the polygraph examiner to prepare the test, appellant talked freely with the investigating officers about the abduction. The officers gave him coffee and shared their cigarettes with him.

Appellant then asked the officers to direct him to the restroom, and the officer in charge told him that he would take him there because the access to the restroom in that area of the building was restricted and required a key card. The officer accompanied appellant to the restroom, waited for him, then let them both back into the work area with his key card, and returned to his desk.

The polygraph examination focused on the details of the appellant's abduction story. The examiner asked a series of ques-

tions about the abduction of Steven by Linda, and whether the appellant knew where Steven was. At the conclusion of the polygraph examination, the examiner informed the appellant that the test indicated that the appellant had not been truthful. Appellant then told the polygraph examiner that he wanted to talk to the investigating officer. The examiner relayed this message to the officer, and also told the officer that, in his opinion, appellant had failed the test.

Appellant asked the officer if they could go somewhere and talk, and the officer suggested they could go outside. Appellant agreed, and he and the officer walked outside to the driveway area beside the building. During this conversation, appellant told the officer that Steven was dead and that he would take the officer to the body if he and the officer went alone. The officer then placed appellant under arrest and read him the *Miranda*[1] warnings.

Appellant continued talking with the officer until they arrived at the appellant's apartment complex. During the ride to the apartment complex, appellant told the officer that Steven had died early on the morning of August 16, and that he had placed the body in a dumpster.

Although appellant told the officer an exculpatory version of the incidents leading up to Steven's death, the officer testified about this version only during the hearing on appellant's motion to suppress, but not at trial.

After arriving at the apartment complex, appellant directed the officer to the garbage dumpster in which Steven's body was later found.

■ Appellant's first point of error complains of the admission of appellant's "exculpatory" in-custody statements, but fails to identify the exact statements complained of. Nonetheless, the only statements of

the appellant admitted at trial were (1) the statements about the abduction of Steven by Linda; (2) the statements after the polygraph examination that Steven was dead, and that he would take the officer to the body; and (3) appellant's assertive conduct in identifying the dumpster in which Steven's body was found. Of these, the only potentially "exculpatory" statements are those in which appellant told the officers that Steven had been abducted by Linda.[2]

In ruling upon appellant's first point of error, we address only whether the trial court erred in admitting the officer's testimony of what appellant told them about the alleged abduction. Whether the statements were "exculpatory" or "incriminating," they should have been suppressed if illegally obtained. *See Wong Sun v. United States,* 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); *Lewis v. State,* 737 S.W.2d 857, 861 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd).

It cannot be seriously maintained that appellant's exculpatory statements about the abduction of Steven by Linda resulted in any way from custodial interrogation by any police officers. Instead of resulting from any custodial interrogation, appellant first volunteered the abduction story to the police dispatcher, and then to the patrol officers investigating the complaint of abduction.

■ It would be unreasonable to hold that *Miranda,* or Tex.Code Crim.P.Ann. arts. 38.22, 38.23 (Vernon Supp.1988), require the suppression of false statements volunteered by an accused who is not in custody. At the time appellant first related the abduction story, there was no ongoing investigation, much less any custodial interrogation. *See Shiflet v. State,* 732 S.W.2d 622 (Tex.Crim.App.1985). In fact, the only point of police involvement in the entire affair was precisely to investigate

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Although not the subject of a point of error on appeal, we note that the remaining statements, each mainly concerned with the fact of Steven's death, and the location of Steven's body, were assertions of fact and circumstances that were

found to be true, and that conduced to establish the guilt of the appellant. As such, they were admissible under Tex.Code Crim.P.Ann. art. 38.-22(3)(c) (Vernon Supp.1988). *See Ex parte Stansbery,* 702 S.W.2d 643, 647 (Tex.Crim.App. 1986).

the abduction allegations that appellant volunteered after initiating the contact with police.

The abduction story was a statement voluntarily made while appellant was not under arrest, and before there was even a police investigation. Such statements are always admissible. *Davis v. State*, 692 S.W.2d 185, 187 (Tex.App.—Houston [1st Dist.] 1985, no pet.). The fact that appellant repeated the story to several different investigating officers during the afternoon of August 16, and that he was ultimately arrested and charged with murder, cannot logically transform the abduction story into one *that resulted from* custodial interrogation. *See also Shiflet*, 732 S.W.2d at 628.

Appellant's first point of error is overruled.

In his second point of error, appellant complains that the evidence was insufficient to support the alternative allegation in the indictment, that the object allegedly used by the appellant to cause the death of the complainant was unknown to the grand jury.

The indictment in this case charged that appellant caused Steven's death by intentionally and knowingly committing an act clearly dangerous to human life, namely, by striking Steven "with an object unknown to the grand jury." The indictment charged in the alternative that appellant intentionally and knowingly caused the death of Steven by striking him with his hand.

■ When an indictment alleges that the manner and means used to inflict an injury is unknown, and the evidence at trial does not show what type of object was used, a prima facie showing exists that the object was unknown to the grand jury. *Washington v. State*, 677 S.W.2d 142, 145 (Tex.App.—Dallas 1984, no pet.); *see also Cunningham v. State*, 484 S.W.2d 906, 911 (Tex.Crim.App.1972). Here, the grand jury foreman testified that the grand jury investigated the cause of death, but were unable to determine the object used to cause the injury. There were no eyewitnesses to the infliction of the injuries other than the appellant, and he did not testify at trial. The

pathologist who performed the autopsy on Steven also testified that he was unable to determine the specific object used to cause the death. Nothing more specific was developed at trial concerning the object used to inflict the injuries. Further, from all the evidence, it appears that additional investigation by the grand jury could not have determined the exact manner or means or the instruments used to inflict death. *Simon v. State*, 488 S.W.2d 439, 444 (Tex. Crim.App.1972). Expressed another way, even if the grand jury had been in possession of all the evidence introduced at trial, they would have been unable to identify the exact nature of the object used to inflict the injuries. *See Cunningham*, 484 S.W.2d at 911. The evidence was therefore sufficient to support the indictment as alleged.

Appellant's second point of error is overruled.

■ In his third point of error, appellant argues that the evidence was insufficient to prove that appellant caused the complainant's death by striking him with his hand, or with an object unknown to the grand jury.

In reviewing the sufficiency of the evidence to support the conviction, the question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Here, appellant was shown to have been a black belt expert in the martial arts. The medical evidence established that in all probability Steven's death resulted from a blow to the head. While none of the doctors was able to specify the exact manner in which the blow was administered, the medical evidence was that Steven's injury did not result from a fall, or from any other self-inflicted injury. In fact, one doctor specifically denied the possibility that Steven's injury could have been self-inflicted.

Viewing all the evidence, including the evidence of the appellant's conduct and statements after Steven's death, the manner in which appellant disposed of Steven's body by throwing it into a garbage dumpster, and the medical evidence, in the light most favorable to the prosecution, we hold that any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.*

Appellant's third point of error is overruled.

■ In points of error four, five, and six, appellant complains of the admission of an extraneous offense and improper jury argument. Appellant, however, has failed to brief or argue any of these points of error. In support of these points of error, appellant has merely stated that a statement of facts, argument, and authorities under each point of error would be filed with this Court in the form of a supplemental brief within 30 days of the filing of the brief. No such supplemental brief has ever been filed. In the absence of any supporting briefing or argument, these points of error present nothing for review. Tex.R.App.P. 74(f); *McWherter v. State*, 607 S.W.2d 531, 536 (Tex.Crim.App.1980).

Appellant's fourth, fifth, and sixth points of error are overruled.

The judgment is affirmed.