Andrew Berry BAIZE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–89–00543–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 26, 1990.

Rehearing Denied May 31, 1990.

C. Jack Maner, Tulsa, Okl., for appellant.

John B. Homes, Dist. Atty., Charles Rosenthal and Shane Phelps, Assts., Houston, for appellee.

Before HUGHES, BASS and O'CONNOR, JJ.

OPINION

HUGHES, Justice.

This is an appeal from a conviction for aggravated robbery. Appellant, Andrew Berry Baize, was tried with two co-defendants, and the jury found appellant guilty. The jury assessed punishment at 15 years confinement. We affirm the conviction, but reverse for a new trial on punishment.

Derek Spurlock was waiting for a bus around 1:00 a.m. on Westheimer, when a car containing four males pulled up beside him. From inside the car, appellant pointed a gun at Spurlock, and forced him into the back seat. Appellant demanded that Spurlock hand over his money, and hit him in the face with the gun. Spurlock pretended to be unconscious, and the men took his watch, wallet, overcoat, and shoes. The men forced Spurlock out of the car in a residential area. Spurlock then called the police.

In his first point of error, appellant argues that the trial court erred in admitting evidence of extraneous, unadjudicated criminal behavior.

At the close of the State's case, co-defendant Castro called two witnesses who testified that appellant, appellant's brother, and both co-defendants were at a parking lot several miles from the scene of the abduction at 12:15 a.m. on February 11, 1989. Appellant's mother testified that appellant was at home asleep at 1:15 a.m.

In rebuttal to the defense witnesses, the State called James Naiser. Naiser testified that on the night of the offense, February 10, 1989, at 7:20 p.m., he saw appellant breaking out the window of his car in a parking lot on Westheimer. Naiser said that appellant jumped into a car with three other males, two Hispanic and one black. Naiser ran after the car, a Plymouth, until one of the passengers pointed a gun at him. Naiser reported the incident to the police, and gave them the license plate number. Naiser identified appellant and his co-defendants at trial.

■ Appellant placed his identity in issue by presenting alibi testimony.[1] *Hines*, 571 S.W.2d at 325; *but see Boutwell v. State*, 719 S.W.2d 164, 172 (Tex.Crim.App. 1985) (alibi defense does not invariably create a material issue as to accused's identity). Extraneous offenses may become ad-

missible upon a showing by the prosecution both that the transaction is relevant to a material issue in the case, and that the relevancy value of the evidence outweighs its inflammatory or prejudicial potential. *Crank v. State*, 761 S.W.2d 328, 342 (Tex. Crim.App.1988), *cert. denied*, — U.S. —, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989). This analysis must be conducted within the framework provided by the unique facts and circumstances of each particular case, and it does not lend itself to any readily quantifiable set of factors which militate for or against admissibility. *Id.* The analysis is for the trial court in the first instance, and absent a clear abuse of discretion, the court's decision will not be disturbed on appeal. *Templin v. State*, 711 S.W.2d 30, 33 (Tex.Crim.App.1986).

We find that the trial court did not abuse its discretion in admitting evidence of the extraneous offense. The evidence was relevant to the issue of identity, because appellant introduced alibi testimony. *See Chambers*, 601 S.W.2d at 362. Further, the probative value of the testimony regarding the extraneous offense was not substantially outweighed by the danger of unfair prejudice. *See Banda v. State*, 768 S.W.2d 294, 296 n. 1 (Tex.Crim.App.1989), *cert. denied*, — U.S. —, 110 S.Ct. 291, 107 L.Ed.2d 270 (1989).

The crimes shared common characteristics, which ensured that evidence of the extraneous offense was more reliable and of greater probative value than mere evidence of the commission of another crime. *See Hines*, 571 S.W.2d at 325. Both crimes occurred on Westheimer, within 1.3 miles of each other. *Cf. Ford*, 484 S.W.2d at 729 (court noted lack of testimony describing the distance between the two crimes). The crimes were separated by only six hours. *Cf. Hines*, 571 S.W.2d at 325 (extraneous offense occurred three months after the alleged offense). Both crimes involved

---

1. The State may then offer evidence of an extraneous offense to prove identity if there is some distinguishing characteristic common to both the extraneous offense and the offense for which the defendant is on trial. *Chambers v. State*, 601 S.W.2d 360, 362 (Tex.Crim.App.1980). The requirement that the State prove distin-

guishing characteristics ensures that evidence of the extraneous offense is more reliable and of greater probative value than mere evidence of the commission of another crime. *See, e.g., Hines v. State*, 571 S.W.2d 322, 325 (Tex.Crim. App.1978); *Ford v. State*, 484 S.W.2d 727, 730 (Tex.Crim.App.1972).

three young Hispanic males and one black male, and the presence of a gun. The similarities in the case at hand are stronger than in the cases cited by appellant, where convictions were reversed because of improperly admitted evidence of extraneous offenses. *See, e.g., Hines,* 571 S.W.2d at 325; *Ford,* 484 S.W.2d at 729.

Appellant's first point of error is overruled.

In his second point of error, appellant argues that the trial court erred in allowing evidence of extraneous criminal behavior. The evidence complained of includes an admission and threat made by co-defendant Castro during a phone conversation, and evidence that each defendant was involved in a series of motor vehicle burglaries, shooting the windows out of vehicles, and the theft and sale of radar detectors.

■ We find that the complaints concerning the phone call, cross-examination of Mr. Kutka and Mr. Castro, (the co-defendants' fathers), and the testimony of Officer Stoppelberg were waived for appellate review because the appellant failed to object and preserve the complaints. TEX.R. APP.P. 52(a). We will consider appellant's complaints regarding the testimony of Officer Riehl and Mr. Frank during the punishment phase of the trial.

■ The prosecutor asked Officer Riehl whether he had an opinion on whether the defendants were law-abiding citizens, and Officer Riehl testified that appellant "doesn't believe in the law." Appellant moved to strike Riehl's testimony, and was overruled. However, the court sustained a co-defendant's objection to the form of the questions being asked by the prosecutor. We find that the court did not abuse its discretion in refusing to strike the testimony. *See Jackson v. State,* 575 S.W.2d 567, 570 (Tex.Crim.App.1979).

■ Mr. Frank testified on direct examination that he had known appellant for approximately 10 years, and that, in his opinion, appellant's reputation in the community for truth and veracity was good. Appellant complains on appeal that the prosecutor asked Mr. Frank improper ques-

tions regarding the improper introduction of unproven extraneous offenses.

On direct examination, Mr. Frank answered the following questions:

Q: Do you have an opinion as to what this young man's reputation for truth and veracity is in the community?

A: Yes, sir, I do.

Q: What is that opinion?

A: Andrew, all the years I have known him, has been very truthful with me.

Q: Can you tell us, is it good or bad?

A: Andrew is one of the finest young men I have ever coached.

Counsel: Objection—

Court: Sustained. The answer is good or bad. You can answer it good or bad; that is all you can say.

A: I think it is good.

The prosecution recalled Mr. Frank to the witness stand, and asked the following questions:

Q: Earlier you testified you believed the defendant, Mr. Baize, was a good boy;

. . . .

Q: When you said that, did you know or have (sic) you heard that Mr. Baize was involved the two months previous to this offense in a series of burglaries of motor vehicles?

. . . .

Q: Have you heard that involved shooting the windows out of those vehicles?

. . . .

Q: Have you also heard that that series of burglaries of motor vehicles involved a theft of radar detectors out of those vehicles?

. . . .

Q: And you heard some of them, of shooting out the windows, were just for the fun of it; did you know that?

. . . .

Q: Do you know whether the defendant, Mr. Baize, has been involved in selling those radar detectors, some $500 worth, to fellow students at Strake Jesuit?

. . . .

Q: And have you heard that it is in fact Andrew Baize who is selling those radar detectors to fellow students?

After the State's questions, the defense counsel moved for a mistrial based on the improperly introduced extraneous offenses of criminal behavior.

We find that the prosecutor's cross-examination was improper impeachment of the witness. Mr. Frank testified that in his opinion, appellant's reputation in the community for truth and veracity was good.[2] However, the State's questions regarding extraneous offenses were not related to the characteristics of truth and veracity, but pertained to reputation for being a peaceful and law abiding citizen. Appellant had not placed his reputation for being a peaceful and law abiding citizen in issue, and therefore, the State's questions were improper. Moreover, we cannot say that the error made no contribution to the punishment. *See Els v. State*, 525 S.W.2d 11, 14–16 (Tex.Crim.App.1975).

We find the error is reversible, and order that the punishment be reversed, and the cause remanded for a new trial on punishment.

---

**2.** This testimony was irrelevant, because appellant did not testify, and therefore, his reputation for truth and veracity was not an issue. *Cf.*

*Quiroz v. State,* 764 S.W.2d 395, 399 (Tex.App.— Fort Worth 1989, pet. ref'd).