**William Wayne GORDON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–89–200–CR.**

Court of Appeals of Texas, Austin.

Sept. 26, 1990.

Melvin Gray, San Angelo, for appellant.

Gerald A. Fohn, Dist. Atty., San Angelo, for appellee.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

CARROLL, Justice.

After waiving a jury trial, appellant was convicted of burglary of a habitation. Finding the felony enhancement allegations contained in the indictment true, the district court assessed punishment at sixty (60) years confinement in the penitentiary. At trial, the State used an accomplice's testimony to convict appellant. Attacking, among other things, the admissibility of the accomplice's testimony, appellant now appeals the judgment of conviction. Finding no reversible error, we will affirm the district court's judgment.

## FACTUAL BACKGROUND

On January 19, 1989, Kay and Ted Millican reported to the Coke County Sheriff that their home had been burglarized. They claimed that guns, jewelry, and some coins had been taken. The next day, the sheriff started an investigation, taking Kay Millican to a jewelry store in San Angelo. Detective Robert Lloyd of the San Angelo Police Department accompanied Kay Millican and the sheriff. The day of the burglary, Cheryl Wendland, the store proprietor, reported to Robert Lloyd that she purchased a "possibly stolen" diamond ring from a suspicious person.

Kay Millican identified the diamond ring as one of the pieces of jewelry stolen from her home. Ms. Wendland identified appellant from an array of photographs as the person who sold the ring to her the day of the burglary. She testified that appellant told her that he was selling his grandmother's ring and that he wanted $75.00. She became suspicious because the ring appeared to be worth $500.00 to $2,000.00, and it did not look like a "grandmother's ring." Thus, she called detective Lloyd. In addition, Ms. Wendland gave the sheriff the bill of sale containing appellant's signature and drivers license number. The sheriff obtained an arrest warrant for appellant

for burglary of a habitation and arrested appellant at his home.

At the time of arrest, appellant possessed a watch and some coins later identified as property taken during the burglary. After going to jail, appellant agreed to take the sheriff back to his residence where the sheriff recovered several more pieces of stolen jewelry. The sheriff then obtained a written confession from appellant. Appellant admitted that he obtained numerous pieces of jewelry and coins from Jerry Boothe on January 19th. Appellant claimed that Boothe told him that Boothe obtained the jewelry, coins and several rifles from his brother; Boothe asked appellant if he would try to sell some of the jewelry. Appellant admitted that he sold the diamond ring to Cheryl Wendland at the jewelry store and several other pieces· at other locations. Appellant claimed that he gave the proceeds to Boothe, who in turn gave a watch and several silver dollars back to appellant because Boothe "owed" him fifteen dollars.

The next day, January 21st, the sheriff attempted to find Jerry Boothe. After locating Boothe's wife, Gail Bishop, the sheriff told her to tell Boothe that he was wanted on a city warrant. Later that evening, the sheriff went to Boothe's residence. Gail Bishop told the sheriff that Boothe had turned himself in at the Tom Green County jail. The sheriff asked if he could search the house, and Gail Bishop consented. The sheriff found four rifles stolen from the Millicans in Boothe's room.

At trial, Jerry Boothe testified that he and appellant burglarized the Millican's house the morning of January 19th at appellant's urging. Boothe further testified that they returned to Boothe's home around noon to hide the rifles, and that appellant left the house to attempt to sell some of the jewelry.

Gail Bishop testified that appellant came to their home the day of the burglary to see Jerry Boothe. She testified that appellant came over early in the morning; that he and Boothe drove off together; and that they returned around lunch time.

Upon taking the witness stand, appellant admitted that he went to Jerry Boothe's home the morning of the burglary. He claimed that he left the house with Boothe early that morning to drop off Boothe's children and to pick up some marijuana. He testified that they returned to Boothe's home around 10:00 a.m.; that Boothe left again; that appellant remained at Boothe's home, splitting wood for the next two hours; and that he then went to his mother's home for lunch.

He testified that he returned to Boothe's home around 12:45 p.m. He found Boothe sitting in the kitchen with several pieces of jewelry spread across the kitchen table. Boothe supposedly told appellant that the items belonged to his brother, who needed to liquidate the jewelry to pay several debts. Boothe asked appellant if he would sell the jewelry because potential buyers would require the seller to show a driver's license, which Boothe did not have. Appellant testified that he agreed to help Boothe and left to sell some of the jewelry. With regard to the sale to Ms. Wendland at the jewelry store, he denied at trial that he told her that the diamond ring belonged to his grandmother.

Appellant claimed that he returned to Boothe's house later that afternoon and gave him the money from the sales. He testified that Boothe then showed him the stolen rifles and asked him if he would sell the rifles for his brother; he declined because he was on parole. Later that night, appellant was arrested and admitted that he had sold the jewelry for Boothe, but claimed that he did not know that the property was stolen.

## APPELLANT'S CONTENTIONS ON APPEAL

In three points of error, appellant contends that the court erred in admitting Jerry Boothe's accomplice testimony into evidence because there was insufficient evidence to corroborate Boothe's testimony; in failing to suppress the testimony of accomplice Boothe and his wife, Gail Bishop, because they communicated about the case in violation of "the rule" after he testified

but before she testified; and in failing to replace the court reporter for displaying obvious hostility towards appellant's trial counsel which denied appellant due process of law and effective assistance of counsel.

## ACCOMPLICE TESTIMONY

The Texas Code of Criminal Procedure states that a conviction cannot be based upon the testimony of an accomplice unless "corroborated by other evidence *tending to connect the defendant with the offense committed;* and the corroboration is not sufficient if it merely shows the commission of the offense." Tex.Code Cr.P.Ann. art. 38.14 (1979) (emphasis added). Appellant claims that the district court violated this provision by allowing Jerry Boothe to testify against appellant because there was no evidence or, alternatively, insufficient evidence to corroborate Boothe's testimony. More specifically, appellant argues that aside from Boothe's testimony, there is no other evidence, direct or circumstantial, placing appellant at the Millican's home.

In order to determine whether there is sufficient evidence corroborating Boothe's testimony, we ignore Boothe's testimony and examine the record to determine whether any other inculpatory evidence tends to link appellant to the crime; if so, the corroboration is sufficient. *Story v. State,* 153 Tex.Crim. 541, 221 S.W.2d 917 (1949). The corroborative proof need not directly link appellant to the burglary; it is sufficient if it tends to connect appellant with the commission of the offense. *Reed v. State,* 744 S.W.2d 112, 125 (Tex.Cr.App. 1988); *Shannon v. State,* 567 S.W.2d 510, 513 (Tex.Cr.App.1978). Furthermore, the mere presence of appellant in Boothe's company shortly before or after the commission of the crime is not, in itself, sufficient corroboration. *Ayala v. State,* 511 S.W.2d 284, 287 (Tex.Cr.App.1974).

In *Tolley v. State,* 717 S.W.2d 334 (Tex.Cr.App.1986), a case almost squarely on point with the case before us, the Court of Criminal Appeals determined that the defendant's possession of stolen property sufficed as corroboration of an accomplice's inculpatory testimony. Although the court noted that each corroborating testimony case must be individually considered on its own facts, it held that testimony by a non-accomplice witness that the defendant possessed the stolen property was sufficient to corroborate the accomplice's testimony. *Id.* at 336.

Here, numerous witnesses testified that they purchased jewelry from appellant the day of the burglary—jewelry later identified by the Millicans. In addition, the Coke County Sheriff testified that when he arrested appellant, appellant had the Millican's watch and several silver dollars in his possession. The sheriff also recovered several other pieces of the stolen jewelry from appellant's home.

In the context of numerous conflicts in the record with regard to appellant's explanation as to why he possessed the stolen jewelry and as to his whereabouts at the approximate time of the burglary, we hold that the extensive and uncontroverted evidence of appellant's possession of the property sufficiently corroborated Boothe's inculpatory testimony. *Id.;* Tex.Code Cr.P. Ann. art. 38.14 (1979). The court therefore did not err when it admitted Boothe's testimony. Accordingly, we overrule appellant's first point of error.

## WITNESS' COMMUNICATION

Appellant invoked "the rule" at the beginning of trial, and accordingly, the court instructed the witnesses not to discuss the case among themselves or they would be barred from testifying. *See* Tex. R.Cr.Evid.Ann. 613 (Pamp.1990); Tex.Code Cr.P.Ann. art. 36.06 (1981). The record indicates that after Boothe testified but before Gail Bishop testified, Boothe and Bishop discussed the matter raised during Boothe's testimony that appellant had allegedly "slept" with Gail Bishop.

During a hearing outside the presence of the jury, a witness testified that she saw Boothe and Bishop pass a note in the witness room. During the same hearing, Bishop testified that Boothe merely asked her whether she had slept with appellant,

and she simply denied that she had. She also denied that they passed notes to one another. Except for Boothe's claim that they did not discuss the case, there is no other evidence in the record as to the substance of Boothe and Bishop's conversation.

Appellant argues that both Boothe and Bishop's testimony against him should have been stricken from the evidence by the court. We note that the purpose of "the rule" is to prevent *corroboration, contradiction,* and the *influencing of witnesses. Ex parte Robertson,* 731 S.W.2d 564, 566 (Tex.Cr.App.1987). Thus, not every violation of "the rule" will result in reversal; we must first determine if the violation resulted in harm. *Hougham v. State,* 659 S.W.2d 410, 413 (Tex.Cr.App. 1983). In this regard, the district court was vested with broad discretion in determining whether the violation injured appellant; we will not disturb the court's ruling absent a clear abuse of discretion. *Haas v. State,* 498 S.W.2d 206, 210 (Tex.Cr.App. 1973).

Although Boothe and Bishop's discussion probably violated "the rule" and article 36.-06 of the Code of Criminal Procedure, we conclude that appellant was not harmed by the discussion. First, there was no corroboration of testimony that resulted from their discussion: before the improper discussion, Boothe testified that he was not aware of any sexual relationship between his wife and appellant, but Gail Bishop subsequently admitted that she and appellant had had an affair.

In addition, Gail Bishop's affirmative testimony about the affair tended to reinforce appellant's assertion that Boothe had a vendetta against appellant. That is, Bishop's testimony did not contradict appellant's proof; it may have even reinforced it. There is simply nothing in the record that indicates that the discussion "influenced" Gail Bishop's testimony. *Ex parte Robertson,* 731 S.W.2d at 566. We there-

fore conclude that the district court did not err when it overruled appellant's motion to strike both Bishop and Boothe's testimony.[1] Accordingly, appellant's second point of error is overruled.

## COURT REPORTER'S CONDUCT

█ In appellant's final point of error, he asserts that the court's failure to replace the court reporter denied him due process of law and effective assistance of counsel. The record indicates that there was indeed overt hostility between appellant's trial counsel and the court reporter. They exchanged personal words over their beliefs about the "guilt" of appellant and counsel's representation of him. The record indicates that these exchanges took place *outside court proceedings* and primarily out of ear-shot of the presiding judge, appellant, and the prosecutor. Several verbal altercations took place outside the courtroom. The court instructed both the attorney and the court reporter to refrain from further contact once it was aware of the conflict.

Apparently, there are no Texas cases that deal directly with the issue of a court reporter's possible misconduct. There are, however, numerous cases dealing with prosecutorial and judicial misconduct. Appellant argues that these cases are persuasive because the court reporter is an officer of the court just as are the judge and the prosecutor. Because the court reporter plays a passive, non-judicial role in the proceedings and because the misconduct cases cited by appellant involve misconduct transpiring before the trier of fact during court proceedings, we are not persuaded that the prosecutorial and judicial misconduct cases control the analysis here.

Regardless of the analytical framework, appellant bears the burden of demonstrating from the record that the district court's failure to dismiss the reporter denied appellant due process and effective assistance of

1. Even if we concluded that the violation tainted Gail Bishop's subsequent testimony, Jerry Boothe's testimony given before the discussion would not have been subject to sanction; that is, any testimony taken before the discussion could

not be tainted. *See Beets v. State,* 767 S.W.2d 711, 746 (Tex.Cr.App.1987). On the other hand, any recall or rebuttal testimony given by Boothe after the discussion would have been subject to sanction had harm been demonstrated.

counsel. *See Ex parte Perkins*, 706 S.W.2d 320, 323 (Tex.Cr.App.1986); Tex.R. App.P.Ann. 81(b)(2) (Pamp.1990). Appellant does not explain nor does the record reveal how appellant was denied due process through the creation of a "non-neutral atmosphere" biased against appellant. From our reading of the record, the court made every effort to treat defense counsel and appellant with respect; the court apparently gave appellant, through his counsel, wide latitude during the trial in asking questions, in making objections, and in offering evidence. Appellant simply fails to identify evidence from the record to the contrary.

With regard to a denial of effective assistance of counsel, we must first determine whether the court reporter's conduct caused representation outside the wide range of professionally competent assistance required by the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Cr.App.1986). If we determine that counsel's performance was objectively deficient because of the court reporter's misconduct, we will then determine whether there is a reasonable probability that, but for counsel's errors caused by the court reporter, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Hernandez*, 726 S.W.2d at 57.

Appellant fails to demonstrate, and the record does not reflect, any lapse in defense counsel's performance due to the conduct of the court reporter either in or out of court. With regard to the court reporter's conduct during the taking of testimony, the reporter apparently took extra precautions to ensure that the record was accurate. He even interrupted direct questioning of appellant by defense counsel to make sure that he properly recorded a specific time of day with regard to appellant's whereabouts at the time of the burglary. The record simply does not indicate that defense counsel's performance was anything less than acceptable within the standards of *Strickland* and *Hernandez*.

Therefore, we conclude that the district court did not abuse its discretion when it refused to replace the court reporter. Accordingly, we overrule appellant's third point of error.

Because we find no reversible error in the record, we affirm the district court's judgment.