James Lawrence STRINGER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–91–00438–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 17, 1992.

Discretionary Review Refused
April 14, 1993.

Paul J. Hilbert, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Linda A. West, Susan Brown, Asst. Dist. Attys., Houston, for appellee.

Before DUGGAN, DUNN and MIRABAL, JJ.

OPINION

DUGGAN, Justice.

Following his plea of not guilty, a jury found appellant guilty of aggravated sexual assault, found one enhancement allegation in the indictment to be true, and assessed his punishment at confinement for life. None of appellant's 10 points of error challenge the sufficiency of the evidence. We affirm.

The complainant, S___ A___, testified that on May 25, 1990, she returned to her Houston apartment at about 4:00 p.m., entered, locked the door, and set the alarm system. Soon, she heard a knock on the door and a man calling, "Maintenance." She looked through the peep hole and saw a man she identified as appellant, whom she had seen standing near the apartment complex mailboxes when she checked her mail before proceeding to her apartment. She stated that she thought he was a new maintenance man because he was dressed like one, and she knew that one of the regulars was on temporary leave. Because of this, she turned off the alarm, opened the door, and let him in.

Once inside, appellant was unable to explain what repair work he was to do in the apartment; the complainant went to her telephone and began to dial the manager's office. Appellant grabbed her, ripped the telephone cord from its wall attachment, and started choking her. She freed herself, picked up her iron, and struck him three times in the head. She testified that appellant then took the iron from her and struck her with it. He slapped her, cursed her, ripped off her clothes, and forced her to the floor, where he proceeded to sexually assault her. He committed oral sodomy upon her, and forced her to do the same to him, inserted his finger into her vagina, and had vaginal intercourse with her. She stated that, as she lay in pain on her stomach, she heard him zip up his pants, chuckle, and walk out of the apartment. She was able to use a second telephone to call 911; investigating police officers arrived promptly. Four days later, she identified appellant as her assailant from a photo spread.

At trial, appellant raised the defense of alibi and offered supporting testimony from various witnesses. The State presented rebuttal testimony from two women, the named complainants in prior sexual assault convictions against appellant. Both testified that they were sexually assaulted by appellant in their apartments at the same complex five and one-half years before the primary offense, on October 11, 1984, and November 29, 1984, respectively. The State proved that appellant was incarcerated for these crimes, first in the Harris County Jail and then in the Texas Department of Criminal Justice, Institutional Division, from December 30, 1984, until his release on parole on March 20, 1990, some 66 days before the attack on S___ A___.

■ In his first point of error, appellant asserts the trial court erred in admitting the two extraneous offenses into evidence. He acknowledges that his identity was at issue because he raised the defense of alibi, *Baize v. State,* 790 S.W.2d 63, 64 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd), and that the probative value of extraneous offense evidence is determined by (1) the availability of alternative sources of proof, (2) the closeness in time between the extraneous offense and the charged offense, and (3) the similarities between the extraneous offense and the charged offense. *See Robinson v. State,* 701 S.W.2d 895, 898–99 (Tex.Crim.App.1986); *Plante v. State,* 692 S.W.2d 487, 491–93, 495 (Tex.Crim.App. 1985).

Appellant focuses his challenge to the admission on the remoteness in time—five and one-half years—between the two extraneous offenses and the primary offense. However, the cases he cites as authority are distinguishable. In each cited case, temporal remoteness was not the only basis for inadmissibility of the prior offense. In *Plante,* 692 S.W.2d at 494, there was no "clear showing" that the defendant partici-

pated in the extraneous offense. In *Bachhofer v. State,* 633 S.W.2d 869, 870, 872 (Tex.Crim.App. [Panel Op.] 1982), the extraneous offense found to be too remote in time occurred in Oklahoma four years and four months before the primary offense; additionally, no final conviction for it was shown. In *James v. State,* 554 S.W.2d 680, 681 (Tex.Crim.App.1977), the alleged extraneous offense found to be too remote in time occurred in Florida. In holding the extraneous offense to have been erroneously admitted, the court noted that "there was no proximity in time *or place* of the extraneous offense to the offense for which [the defendant] was on trial." *Id.* at 683 (emphasis added). In *Ybarra v. State,* 401 S.W.2d 608, 609 (Tex.Crim.App.1966), a misdemeanor conviction for *possession* of beer for sale in a dry area, the court held that, among other defects, evidence of the defendant's conviction for a different misdemeanor offense, unlawful *sale* of beer, four years and two months before the primary offense, was too remote.

■ In our case, appellant was arrested December 30, 1984, for the two prior aggravated sexual assaults. This date of arrest was one month after his commission of the second prior offense. Upon his release on parole on those convictions, he was free only 66 days before the commission of the primary offense. In the nearly 66 months between the commission of the most recent of the two prior extraneous offenses and the primary offense, appellant was free from confinement for approximately three months only. Stated otherwise, although the two extraneous offenses were committed five and one-half years before the primary offense, appellant had *no opportunity* to commit aggravated sexual assaults on female victims for more than five years and three months of that time because of his penal confinement.[1]

---

1. Even if the period of confinement is ignored, a period of five and one-half years between an extraneous offense and a primary offense would be neither too remote nor unprecedented. In *Linder v. State,* 828 S.W.2d 290, 296–97 (Tex. App.—Houston [1st Dist.] 1992, pet. filed), a seven-year-old extraneous offense was held not

to be too remote to be admissible at trial for the primary offense. "The factors of remoteness and similarity of an extraneous offense are important, not in and of themselves, but only as they bear on the relevancy and probative value of the offered evidence of extraneous offenses." *Id.* at 297. Likewise, in *Bevers v. State,* 811

Additionally, the locations of the extraneous offenses in the same apartment complex and the perpetrator's consistent *modus operandi* then and now, rendered them highly probative to show appellant's identity in the present case. All three offenses shared common characteristics: (1) each offense occurred at the same apartment complex; (2) the offender entered the apartment of each victim shortly after she arrived home; (3) the offender wore what appeared to be the uniform for the complex's maintenance workers; (4) the offender immediately overcame his victims and got them out of their clothes; and (5) the offender first forced each victim to perform oral sex on him, and then had vaginal intercourse with her. The similarities in the three offenses were striking; the extraneous offenses were so distinctively like the primary offense as to bear the "signature" of appellant's handiwork. *See Beets v. State*, 767 S.W.2d 711, 740–41 (Tex.Crim. App.1988) (Op. on reh'g); *Baize v. State*, 790 S.W.2d at 64–65.

The standard for determining whether evidence of extraneous offenses was properly admitted is that of clear abuse of discretion. *Crank v. State*, 761 S.W.2d 328, 342 (Tex.Crim.App.1988), *cert. denied*, 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989). The trial court did not abuse its discretion in determining that the probative value of the two admitted extraneous offenses outweighed their prejudicial value. We overrule appellant's first point of error.

■ In his sixth point of error, appellant asserts the trial court erred in admitting evidence of the extraneous offenses in the State's rebuttal because the State did not give him adequate notice of its intention to introduce such evidence, although he requested notice in his pretrial discovery motion under Tex.R.Crim.Evid. 404(b). He urges he was thereby denied due process and due course of law, as well as effective assistance of counsel under the Texas and federal constitutions. His seventh point of error urges that denial of his pretrial motion to discover the extraneous offenses was an abuse of the trial court's discretion, as well as a denial of due process, due course of law, and effective assistance of counsel under both federal and state constitutions.

Appellant cites Tex.R.Crim.Evid. 404(b) as the basis of a requirement that he be notified of the State's intended use of the extraneous prior offenses. The rule reads:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of ... *identity* ... provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce *in the State's case in chief* such evidence other than that arising in the same transaction.

Tex.R.Crim.Evid. 404(b) (emphasis added). Because the State offered evidence of the extraneous offenses on *rebuttal* only, and not during its *case in chief*, the plain reading of the rule defeats appellant's notice argument. Such a reading is the proper one. *Yohey v. State*, 801 S.W.2d 232, 235 (Tex.App.—San Antonio 1990, pet. ref'd); *Herring v. State*, 752 S.W.2d 169, 172 (Tex. App.—Houston [1st Dist.]), *remanded on another ground*, 758 S.W.2d 283, 284 (Tex. Crim.App.1988).

Appellant provides neither supporting argument nor authority for his due process, due course of law, and ineffective assistance of counsel assertions; accordingly, nothing is presented for review on those contentions. *Cox v. State*, 762 S.W.2d 710, 714 (Tex.App.—Houston [1st Dist.] 1988 pet. ref'd); Tex.R.App.P. 74(f). We overrule appellant's sixth and seventh points of error.

■ In his second and third points of error, appellant asserts the trial court erred: (1) in overruling his objection to the prosecutor's rebuttal question to the second extraneous offense witness; and (2) in

S.W.2d 657, 662 (Tex.App.—Fort Worth 1991, pet. ref'd), a seven-year-old extraneous offense was admissible to show identity because there were significant similarities between the two offenses.

denying his motion for mistrial after the witness answered the question. The prosecutor's rebuttal question asked: "Was it necessary for you to appear in court on your case by the D.A.?" After appellant's objection was overruled, the witness answered: "No, it was never necessary. There were too many cases."

The witness had earlier testified for the State about appellant's November 1984 offense against her. In earlier cross-examination, defense counsel had elicited from her that she had never "gone to a trial and testified to any of these things you have testified to," and that she had never in person pointed at this man and said "that is the man that did these things to me." The negative answers elicited by appellant's counsel undermined the witness's credibility by implying that if her allegations against appellant were true, she would have pursued them in court earlier. The prosecutor was entitled to clarify the misimpression by asking her if it was "ever necessary for [her] to appear in court."

■ Part of her answer was proper ("No, it was never necessary."). The balance of her answer ("There were too many cases.") was unresponsive because the question could have been answered "yes" or "no." The trial court correctly sustained appellant's "unresponsive" objection; however, appellant did not ask that the jury be instructed to disregard the unresponsive part of the answer, but instead asked immediately for a mistrial. Because appellant did not ask for an instruction to disregard, his complaint was waived. *May v. State*, 738 S.W.2d 261, 272 (Tex.Crim. App.), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 158 (1987); *Cureton v. State*, 800 S.W.2d 259, 261 (Tex.App.— Houston [14th Dist.] 1990, no pet.); *see also Fuller v. State*, 827 S.W.2d 919, 926 (Tex.Crim.App.1992) (defendant's motion for an instruction to disregard and motion for mistrial, voiced together and denied together, held sufficient to preserve error).

We overrule appellant's second and third points of error.

In his fourth point of error, appellant asserts the trial court erred in failing to sustain his motion for mistrial after the first extraneous offense witness gave a nonresponsive answer and mentioned plea bargaining of an extraneous offense.

During the State's rebuttal showing the October 1984 offense against the first extraneous offense victim, appellant's counsel asked the witness on cross-examination, "Have you attended any court appearance where you saw him or identified him?" She answered: "I was not able to. It's a plea bargain." Appellant objected to her nonresponsiveness, and the trial court said to the witness: "What I need to have you do is listen real carefully to the question and then only answer the question. Don't add anything."

Although the trial court's statement indicated that the witness's answer was unresponsive, it made no ruling. However, appellant's counsel neither pursued a ruling nor requested an instruction to the jury to disregard the response; instead, he moved for mistrial, which the court denied. Because appellant did not obtain a ruling on his objection and request an instruction to disregard the answer, his complaint is waived. *See Tennard v. State*, 802 S.W.2d 678, 684–85 (Tex.Crim.App.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991); *Paster v. State*, 701 S.W.2d 843, 848 (Tex.Crim.App.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed.2d 348 (1986). We overrule appellant's fourth point of error.

■ In his fifth point of error, appellant contends the trial court erred in denying his request to exclude testimony of the first extraneous offense witness because of her alleged violation of "the rule."

The record reflects that both extraneous offense witnesses were sworn; however, it does not indicate that either was ever instructed concerning the exclusionary rule. The first extraneous offense witness testified, out of the presence of the jury, that she did not discuss with the other witnesses what her testimony would be, other than the fact that she "was going to come in and testify what happened to [her]." Before the jury, she stated that her conversation

with other witnesses did not change her testimony in any way.

■ The purpose of the rule is to prevent corroboration, contradiction, and the influencing of witnesses. *Gordon v. State*, 796 S.W.2d 319, 323 (Tex.App.—Austin 1990, pet. ref'd). The trial court is vested with broad discretion to determine whether a violation harms the defendant, and its ruling should not be disturbed absent a clear abuse of discretion. *Id.* The witness's testimony neither corroborated nor contradicted anyone else's testimony regarding the events of October 11, 1984, and she testified that the conversation had no influence on her testimony. No abuse of discretion is shown by the trial court's decision to admit her testimony. *Valdez v. State*, 776 S.W.2d 162, 170 (Tex.Crim.App. 1989), *cert. denied*, 495 U.S. 963, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990); *Guerra v. State*, 771 S.W.2d 453, 476 (Tex.Crim.App. 1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606 (1989); *Green v. State*, 682 S.W.2d 271, 294 (Tex.Crim.App. 1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). We overrule appellant's fifth point of error.

■ In his eighth point of error, appellant complains that the trial court erred in failing to sustain his objection during closing argument to the prosecutor's misstatement of facts and request that the jury convict appellant in the present case for having committed the extraneous offenses.

The pertinent portions of the argument are as follows:

[PROSECUTOR]: And ladies and gentlemen, you know in your heart of hearts that the truth is on *May 25th, 1990*, James Lawrence Stringer, Jr., sexually assaulted [S___ A___]. And you cannot let him walk out of the courtroom knowing that fact to be true.
*There are just too many coincidences. And there are too many people who were positive that he is the man who did it.*
[DEFENSE COUNSEL]: Your Honor, objection. Your Honor, there is only one witness who has identified him as the assailant in this offense. There is no

other evidence presented of anyone positive of his committing the offense on May 25th, 1990.
THE COURT: Objection overruled. The jury will retire to consider its verdict.
(Emphasis added.)

Taken in the context of the entire record, the State's argument did not misstate facts or attempt to brand appellant a criminal generally. The prosecutor pointed out that, although appellant strongly asserted an alibi and possible misidentification, there were too many coincidences between the facts of the two extraneous cases and the primary offense. Each of the three women positively and unequivocally identified appellant as the assailant in *her own case*. The prosecutor's comment did not misstate the testimony elicited. Because the State's rebuttal centered on appellant's identity, the prosecutor could properly answer appellant's alibi and misidentification arguments by reminding the jury of the similarities in the three offenses and the fact that appellant was identified by all three victims. We overrule appellant's eighth point of error.

■ Appellant asserts in his ninth point of error that the trial court erred in denying his motion to strike the indictment's enhancement paragraph because there was a fatal variance between the State's pleading and proof and he "did not receive adequate notice of the complained-of enhancement offense."

The enhancement paragraph reads as follows:

Before the commission of the Offense alleged above on April 18, 1985, in Cause No. 418698 in the *176th* District Court of Harris County, Texas, the Defendant was convicted of the felony of Burglary of a Habitation with the intent to commit sexual assault.
(Emphasis added).

■ The evidence at the punishment phase showed that appellant was convicted in cause number 418,698 in the *176th* District Court of Harris County, Texas, on April 18, 1985. Clerical errors do not amount to fatal variance. *Wright v. State*,

729 S.W.2d 123, 125 (Tex.App.—Beaumont 1987, pet. ref'd); *Watts v. State*, 655 S.W.2d 350, 352 (Tex.App.—Fort Worth 1983, pet. ref'd).

More fundamentally, appellant's motion to strike was made *orally* only at the beginning of the punishment phase of trial; appellant made no timely pretrial objection to the typographical error. Once trial begins, appellant cannot object to defects of form or substance in an indictment or information. *See Studer v. State*, 799 S.W.2d 263, 268, 270–71 (Tex.Crim.App. 1990).

Appellant's argument that the State failed to give notice under Tex. R.Crim.Evid. 609(f) is without merit. Because the pen packet was introduced at the punishment phase of trial solely to prove appellant's prior criminal record, no notice was required under rule 609(f). *Vela v. State*, 771 S.W.2d 659, 662–63 (Tex.App.—Corpus Christi 1989, pet. ref'd). We overrule appellant's ninth point of error.

In his tenth point of error, appellant asserts the trial court erred in denying his motion to recuse because the trial judge was biased against him to such an extent that denied him due process of law.

After the trial court denied appellant's objections to evidence of the extraneous offenses, the following colloquy occurred between appellant's trial counsel and the court:

> [DEFENSE COUNSEL]: Your Honor, I am going to do something that will create a great deal of what I consider judicial temperance and introspection, but *I was present at a point in time when this judge, the Court sitting at this time, Mary Bacon, made a public speech, some several months prior to the trial of this case.* At that public hearing, the Judge, Mary Bacon, made a public statement regarding this case pending in her court involving a defendant sentenced to 40 years in prison who was on parole for a period of two months and went out and committed another aggravated sexual assault at the same apartment complex. That was a state-

> ment, paraphrased, as made by this Court, Judge Mary Bacon, in a public forum many months before trial commenced in this case, and I ask the court to consider that there is a judicial bias that is improper and that the Court may, due to a personal bias and/or prejudice, be acting accordingly, and that *it would be improper for this Court to continue in this case* in light of that personal bias or prejudice which is influencing the decisions of the Court in a manner contrary or potentially contrary to justice and the rules of law of the State of Texas.

> THE COURT: Request isn't timely. Anything else?

> [DEFENSE COUNSEL]: The Court does not deny the speech or the statement being made?

> THE COURT: I did not make that precise statement.

> [DEFENSE COUNSEL]: Did you, however—

> THE COURT: I have nothing more to say on that issue. Your request is not timely.

(Emphasis added.)

This exchange occurred on appellant's oral motion to recuse during trial. From his spoken words, it is apparent that appellant's counsel had prior notice of the complained-of speech and any alleged bias. A motion to recuse the presiding judge must be filed at least 10 days prior to the date set for trial or hearing. *DeBlanc v. State*, 799 S.W.2d 701, 705 (Tex.Crim.App.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1990). Appellant has preserved nothing for review. We overrule appellant's tenth point of error.

The trial court's judgment is affirmed.