Richard Earl **THOMAS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–90–00540–CR.

Court of Appeals of Texas, Houston (1st Dist.).

May 16, 1991.

Discretionary Review Refused Sept. 18, 1991.

Kirk Oncken, Houston, for appellant.

John B. Holmes, Harris Co. Dist. Atty., Roger Haseman, Kelly Sigler, Asst. Harris Co. Dist. Attys., for appellee.

Before WILSON, PRICE[1] and COHEN, JJ.

## OPINION

COHEN, Justice.

A jury found appellant guilty of unauthorized use of a motor vehicle. The trial court found two enhancement allegations true and assessed punishment at confinement for life.

At approximately 12:30 a.m. on August 16, 1989, Houston police officer D.S. Null saw a Cadillac enter the parking lot of a Stop–N–Go convenience store. Several people left a nearby apartment complex and walked toward the car. Null suspected drug activity. As he approached the Stop–N–Go, the people began to scatter. When he pulled his marked police car into the parking lot, the driver of the Cadillac drove out the same driveway. Null made a U-turn and began approaching the street.

The Stop–N–Go parking lot is elevated approximately two to three feet above the street level, which enabled Null to see into the Cadillac. Upon looking into the car, Null stated he did not see any keys in the ignition, which indicated the car might be stolen. Null drove in front of the Cadillac and stopped. He left his car with his gun drawn. As he approached the Cadillac, he continually instructed the driver to place the car in park and put his hands on the wheel, commands the driver ignored. Null opened the driver's side door and attempted to place his left hand on the driver's shoulder. The driver tried to close the door, and Null's wristwatch caught on the window, trapping Null's left wrist. When the driver tried to close the door, the driver leaned to his right and reached for a pistol. Null then fired once into the glass of the driver's side window, which freed his wrist. The driver sped off. The car was found empty several blocks away. Appellant was arrested at Ben Taub Hospital, where he was being treated for a gunshot wound to the left side of his body.

■ In his first point of error, appellant complains the trial court erred in denying him the right to fully and effectively confront and cross-examine his accusers.

Before trial, appellant subpoenaed the Houston Police Department Internal Affairs Division (IAD) records pertaining to Officer Null. These records showed Null had been investigated by IAD for at least one shooting death. The State filed a pretrial motion in limine requesting that appellant not elicit testimony regarding extraneous acts by police witnesses, evidence of IAD investigations, or IAD reports.

During cross-examination of Null, counsel asked about his statements to officers investigating the scene. The State objected, stating: "Judge, I would object to any questions of this witness regarding the purpose of any statements he might make. First of all, *he has never been involved in any kind of investigation of any shooting,* and it's not relevant to this witness'

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

testimony." The italicized statement was false. Counsel objected that the prosecutor's objection falsely told the jury Null had never been involved in any kind of investigation of any shooting. Counsel sought to clear up this false impression by questioning Null concerning his other shooting investigations. The trial court overruled both the State's objection and appellant's request to cross-examine Null about the other investigations. The trial judge denied a mistrial, but instructed the jury as follows:

THE COURT: Members of the jury, I am going to instruct y'all to disregard the objection that was made by the prosecutor and further admonish y'all that whatever these lawyers say in the form of questions and during arguments, what not, may not be considered by y'all as any evidence. The only evidence that y'all can consider is what y'all hear from the witness stand.

After the court overruled appellant's request to cross-examine Null about other shootings, counsel stated:

Specifically for the record, judge, our question to the officer would be: Officer, it's not exactly true you haven't been involved in other shootings, not to get in details factually of the events of those other shootings, but at least to clear up any possible misunderstanding or misinterpretation by the jury that this man has never been involved in any other shootings.

The answer to this question was known, of course, because of the IAD records. This preserved the error for review. *See Hurd v. State,* 725 S.W.2d 249, 253 (Tex.Crim.App.1987); *Moosavi v. State,* 711 S.W.2d 53, 55 (Tex.Crim.App.1986); *Gutierrez v. State,* 764 S.W.2d 796, 798 (Tex. Crim.App.1989).

We do not approve of the prosecutor's false statement to the jury. We have not hesitated to order a new trial when a prosecutor's false statement has deprived a defendant of a fair trial. *Scruggs v. State,* 782 S.W.2d 499, 502 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd); *Dopico v. State,* 752 S.W.2d 212, 213 (Tex.App.—

Houston [1st Dist.] 1988, pet. ref'd); *Borgen v. State,* 682 S.W.2d 620, 623–24 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd); *Govan v. State,* 671 S.W.2d 660, 662–63 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd). The prosecutor obviously knew her statement was false. She had previously told the court that such evidence existed and urged that it be excluded. Thus, the prosecutor could not have acted in good faith, and the State does not claim she did.

Nevertheless, we decline to reverse for two reasons. First, the issue of Null's other shootings was collateral to this offense. It could have been highly relevant, for example, if appellant were charged with attempted capital murder, as he originally was. This distinguishes the harm here from that suffered in *Dopico, Govan, Scruggs,* and *Borgen.* Second, the trial judge gave a prompt, strong instruction. Such an instruction generally cures the harm from an improper question. If an instruction cures the harm from one kind of improper statement by a prosecutor, a question, we hold it may cure that arising from another form of improper statement, an objection. *Huffman v. State,* 746 S.W.2d 212, 218 (Tex.Crim.App.1988).

The first point of error is overruled.

In his second point of error, appellant asserts the trial court erred in denying him the right to effective assistance of counsel by improperly limiting voir dire questioning.

 The right to counsel includes the right to question venire members in order to intelligently exercise peremptory challenges and challenges for cause. *Smith v. State,* 676 S.W.2d 379, 384 (Tex.Crim.App. 1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1985). A voir dire question is proper if it seeks to discover the view of the venire on an issue applicable to the case. *Beaver v. State,* 736 S.W.2d 212, 214 (Tex.App.—Corpus Christi 1987, no pet.). While the general rule is that a trial court should grant a defendant great latitude in questioning a jury panel, *Trevino v. State,* 572 S.W.2d 336, 337 (Tex.Crim.App. 1978), a trial court is permitted to control the voir dire examination to limit improper

interrogation. *Smith v. State*, 703 S.W.2d 641, 643 (Tex.Crim.App.1985).

During voir dire, counsel for appellant asked the following question: "Mr. Wofford, if you believe everything else beyond a reasonable doubt but you knew for sure you didn't believe beyond a reasonable doubt that a deadly weapon was used, could you let Mr. Thomas walk out of here with you?" The trial court sustained the State's objection that this question improperly asked the jury to commit to a particular set of facts.

The indictment alleged that appellant "did then and there unlawfully, intentionally, and knowingly operate a motorpropelled vehicle, namely, an automobile owned by Frank Crimmins, hereafter styled the Complainant, without the effective consent of the Complainant, and the Defendant did then and there use and exhibit a deadly weapon, to-wit, a firearm." The jury was charged on the offense of unauthorized use of a motor vehicle, both with and without a deadly weapon. It found appellant committed the offense with a deadly weapon.

Appellant contends the indictment alleged use of a deadly weapon as an additional element of the primary offense, and therefore, the question was proper. We disagree. A person commits the offense of unauthorized use of a motor vehicle by intentionally or knowingly operating another's motor vehicle without consent. Tex.Penal Code Ann. § 31.07 (Vernon 1989). In this case, the State's failure to prove the use of a deadly weapon would not have entitled appellant to an acquittal because, under these circumstances, the deadly weapon allegation was surplusage. It was not descriptive of something the State was legally required to prove. *Whetstone v. State*, 786 S.W.2d 361, 364–65 (Tex.Crim.App.1990). Counsel's question was objectionable because it sought to commit the venire to an improper application of the law, based on the facts alleged. The better practice is to allege the deadly weapon in a paragraph separate from the primary offense and have that issue decided by the trier of fact at the punishment stage (the trial judge here), not the trier of fact at the guilt/innocence stage.

We conclude that the question called for an improper application of law, and the trial court did not err in sustaining the State's objection. The second point of error is overruled.

Appellant's third point of error asserts a complaint the trial erred in denying a requested jury instruction on the issue of forced abandonment.

Claiming he was subjected to a pretextual traffic stop, appellant moved to suppress items seized from the vehicle, specifically, his fingerprints, samples of his blood, a tennis shoe, and a screwdriver. Relying on *Hawkins v. State*, 758 S.W.2d 255 (Tex.Crim.App.1988), appellant asserts Null's improper conduct forced him to abandon the vehicle, and thus, the jury should have been instructed that if it found Null's conduct improper, it could not consider any incriminating evidence found in the vehicle. Appellant does not complain about the denial of his motion to suppress, only of the trial court's denial of his requested instruction.

The court in *Hawkins* set out a two-prong test to determine whether a defendant involuntarily abandoned property. First, a defendant must be the victim of an illegal arrest or an unwarranted investigatory stop. If so, the court must decide if he abandoned contraband because of the police misconduct. *Hawkins*, 758 S.W.2d at 259. Because neither officer who testified in *Hawkins* could give any specific and articulable facts regarding why they had stopped Hawkins, the court found he had been subjected to an improper investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Hawkins' decision to abandon his contraband was a direct result of the policemen's misconduct. *Hawkins*, 758 S.W.2d at 260.

Null testified that from his elevated position, he saw appellant was driving a car without keys in the ignition. This gave him a reasonable suspicion the vehicle was stolen; thus, there was no improper police action.

The third point of error is overruled.

Appellant next complains the trial court should have suppressed Officer Null's in-court and out-of-court identifications of him.

In *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), the Court stated: "[c]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification."

At the hearing on the out-of-court identification, Null testified he was shown a photospread containing appellant's picture, but could not identify appellant, and in fact, identified someone else. After viewing the photospread, an officer showed Null a single photograph and informed him the picture was that of a possible suspect who was being treated at a hospital for a gunshot wound. Null told the officer he was "fairly positive" the man in the picture was the suspect. Null testified he recognized appellant as the person driving the Cadillac and reaching for the pistol on the night in question. Null stated the basis of his identification was appellant's facial features (although he previously testified he did not get a good look at him) and his square jaw line. Null specifically stated he did not base his identification on the photospread or the single picture the officer showed him.

On cross-examination, Null admitted the only thing he knew about the suspect was that he was black. Counsel pointed out that appellant was the only black in the courtroom. Counsel also pointed out that less than four hours after the incident, Null was unable to identify photographs of the appellant, yet 10 months later, without again seeing either appellant or pictures of him, he was able to identify appellant. Null further admitted he could only be "reasonably sure" that the "man sitting before you, the only black individual in this courtroom" was the driver of the vehicle. The court overruled appellant's motion to suppress and stated he would allow Null's pretrial identification to come before the jury.

During trial, Null testified he told the investigating officers he could not identify the driver of the car face-to-face because he only caught a glimpse of him. He stated the only description he could give to the investigating officers was that the driver was a black male, heavy set, muscular, large shoulders, large neck, square faced, with a few days growth of beard. He admitted that when shown a single picture of appellant, he felt fairly confident appellant was the suspect, but he couldn't be positive, mainly because it was a face-forward picture rather than a profile. The following then took place:

PROSECUTOR: And, Officer Null, from the time you shot the person inside the Cadillac on August the 16th, did you ever again see in person anyone you thought might be the suspect in that case until today?

WITNESS: No, ma'am.

Q: You never saw a live lineup?

A: No, ma'am.

Q: And today, as you sit here in the courtroom, do you recognize the person that you saw on August 16th, 1989, driving and operating the Cadillac?

COUNSEL: Excuse me. I have to object again just to make sure the record is clear on our position in this matter.

THE COURT: Overruled.

A: I feel that the defendant seated there is same suspect.

Q: And for the record, what is the person that you are identifying wearing today?

A: White, long-sleeve shirt, dark tie.

PROSECUTOR: Your Honor, can the record reflect Officer Null has identified the defendant, Richard Earl Thomas?

THE COURT: Yes, ma'am.

Q: Is Richard Earl Thomas the person you saw driving the Cadillac back on August 16th of 1989?

A: I feel reasonably sure that he is.

Q: And, Officer Null, is Richard Earl Thomas the person that you saw reach-

ing for the pistol when you fired the one shot on August 16th of 1989?

A: Yes, ma'am.

■ We conclude that the out-of-court photospread was not "so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification" because Null could not identify appellant from it. The in-court identification is another matter.

■ The State concedes that showing a single photograph of appellant was "probably impermissibly suggestive," but contends Null's in-court identification was independent of it, based on Null's testimony. *See Jackson v. State*, 657 S.W.2d 123, 130 (Tex.Crim.App.1983). The record does not support the State's contention. When asked if he was identifying appellant independent of any photographs, Null responded:

A: It's hard to say. I've been influenced. I've certainly been influenced by seeing pictures, but I feel I could have identified him without them.

Q: Without the picture?

A: Possibly.

We conclude Null's in-court identification of appellant was tainted by the utilization of an impermissibly suggestive photographic display. Not only was Null shown only one picture of appellant shortly after the crime, but Null was told it showed a suspect who was in the hospital with a gunshot wound. *See Ward v. State*, 474 S.W.2d 471, 475 (Tex.Crim.App.1972). Null never positively identified appellant independently of the photograph.

■ We must now determine if appellant was harmed by the trial court's error. TEX.R.APP.P. 81(b)(2). We conclude the error was harmless beyond a reasonable doubt. *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989). Other evidence, overwhelming in nature, identified appellant as the criminal.

Officer R.L. Collins investigated the recovered car and obtained blood samples from the driver's seat and fingerprints. The location of the blood was consistent with Null's account of the shooting.

Dr. Mark Bailey treated appellant at 2:30 a.m. (about two hours after the alleged incident occurred) on August 16, 1989 for a gunshot wound to the abdomen. He stated appellant has type "O" blood. Dr. Bailey showed where on appellant's body the bullet entered and travelled. The location of the wound and the path of the bullet on appellant's body was consistent with Null's account of the shooting.

Walter Stairhime, Jr., a police fingerprint expert, compared the fingerprints that Officer Collins obtained from the car with appellant's prints and testified they were the same. He identified the left ring finger and both palms as matching the prints retrieved by Collins. This linked appellant to the stolen car.

James R. Bolding, a police expert in blood examination, analyzed the blood samples obtained by Officer Collins and testified they were human blood, type "O." This was consistent with appellant's occupancy of the car.

Officer Boyd Smith identified photographs showing appellant's left side, left forearm, and left hand and testified these showed several small wounds to the hand, upper forearm, upper left shoulder, and chest. In Smith's opinion, these wounds could have been caused by broken automobile glass. The location and type of these wounds was consistent with those the driver of the car could have suffered when Null fired into the car window.

Robert Allen lived at the French Quarter Apartments, very near the crime scene. He saw a black male "come over the fence" between the Napoleon (another apartment complex) and the French Quarter. Allen said the man was not moving "agilely, that he appeared to be either in pain or something or out of wind badly." Allen saw the man put his back up against a gate and look carefully around the corner toward the Stop–N–Go. At that point, there was light right above the man. The man was not standing straight up, but was "sort of tucked over." When he walked out to look around at the Stop–N–Go, Allen saw that the man had a pistol in his left hand. Allen

**208**

saw the man's face from the upper lip up, and he had short cropped hair and a muscular build. Allen went to the Stop–N–Go to talk with police. He described the man as 6' to 6'1", about 185 pounds, muscular, very fit, 25 or 26 years old. The jury was able to view appellant at trial and determine whether he fit this description. No evidence shows that he did not.

A few days later, Allen viewed a photo spread and identified someone other than appellant. Allen then attended a lineup. No one told him who to pick. Allen recognized appellant before the lineup began, when appellant passed by with other prisoners. Allen positively picked appellant out of the lineup. In court, he identified appellant as the person he identified at the lineup and as the person he saw on the night of the offense at the apartments. When asked if he would have been able to pick out appellant had he not seen the photos, Allen replied, "Absolutely."

The evidence listed above, physical and eyewitness, conclusively proves that appellant operated the car. It is both greater in quantity and more reliable than Null's eyewitness identification. We are convinced beyond a reasonable doubt that Null's testimony, weakened and impeached as it was, did not contribute to the jury's verdict. The fourth point of error is overruled.

In his last point of error, appellant claims the trial court erred in allowing a policeman, who was present at the line-up, to improperly bolster an identification witness.

During cross-examination, counsel unsuccessfully attempted to impeach Allen's ability to view the scene. After Allen testified, the State called Sergeant K.R. Williamson, who testified he conducted the lineup for Allen to view. Williamson testified, over objection, that Allen positively identified appellant as soon as appellant stepped forward.

 "Bolstering" occurs when an item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party. *Guerra v. State*,

771 S.W.2d 453, 474 (Tex.Crim.App.1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606 (1989); *McQueen v. State*, 705 S.W.2d 271, 274 (Tex.App.—Houston [1st Dist.] 1986, no pet.). Generally, while a witness may testify as to his extra-judicial identification of a defendant, other witnesses may not bolster the first witness' unimpeached testimony. *Coleman v. State*, 760 S.W.2d 356, 360 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

 Bolstering a witness' identification of a defendant has historically been disallowed because the testimony was hearsay. *See Frison v. State*, 473 S.W.2d 479, 481 (Tex.Crim.App.1971) (testimony from a detective that the complainant identified the defendant as one of several robbers was "rank hearsay"); *Clark v. State*, 39 Tex.Crim. 152, 45 S.W. 696, 700 (1898) (justice of the peace's testimony that complainant identified the defendant in a lineup objected to as hearsay). However, TEX. R.CRIM.EVID. 801(e)(1)(C) changed the law concerning bolstering. Rule 801(e)(1)(C) provides a statement is not hearsay and is admissible if the declarant testifies and is subject to cross-examination concerning the statement, and the statement is one of identification of a person made after perceiving him. Allen, the declarant, testified and was subject to cross-examination. Allen's statement was one of identification of a person made after perceiving him. Under these circumstances, bolstering is no longer a valid objection. Moreover, appellant does not state how he was hurt by Williamson's testimony, and we cannot say appellant was harmed. TEX.R.APP.P. 81(b)(2). The jury heard the testimony of Bolding, Stairhime, Bailey, Collins, Smith, and Allen, which overwhelmingly identified appellant as the driver of the vehicle.

The fifth point of error is overruled.

The judgment is affirmed.