**Ricky HENDERSON, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–90–008–CR.**

Court of Appeals of Texas,
Fort Worth.

Oct. 9, 1991.

Robert K. Robinson, II (appeal only) Hurst, and R. Maureen Tolbert, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and Lisa C. McMinn, Asst. Dist. Atty., Fort Worth, for appellee.

Before WEAVER, C.J., and HILL and MEYERS, JJ.

## OPINION

HILL, Justice.

Ricky Henderson appeals his conviction by a jury of the offense of burglary of a habitation. Finding an enhancement paragraph true, the jury assessed Henderson's punishment at fifteen years in the Texas Department of Corrections, now the Texas Department of Criminal Justice, Institutional Division.

Henderson contends in two points of error that the trial court erred by overruling his *Batson* motion and by admitting a photographic lineup used in this case.

We affirm because the court's ruling that the prosecutor's strikes were made for racially neutral reasons was not clearly erroneous, because the Texas Rules of Criminal Evidence eliminate bolstering as a valid objection since it is no longer hearsay, and because we hold beyond a reasonable doubt that the evidence that Henderson complains of did not contribute to his conviction.

■ Henderson urges in point of error number one that the trial court erred by overruling his *Batson* motion. The State's purposeful or deliberate denial of jury participation because of race violates a defendant's rights under the Equal Protection Clause of the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

After a hearing on Henderson's *Batson* motion, the trial court found that one of the veniremembers struck, veniremember number thirty-three, would not have been reached, and that the court personally observed that veniremember number twenty-five had particular trouble understanding the questions presented to her. The court also found, as to each of the veniremembers struck, that the reasons for their being struck were racially neutral and not racially biased.

■ We will review the record in its entirety by considering the voir dire process including the racial constitution of the venire, the prosecutor's neutral explanations, and the appellant's rebuttal and impeaching evidence to determine if the trial court's findings are clearly erroneous. *Whitsey v. State*, 796 S.W.2d 707, 726 (Tex. Crim.App.1989) (opinion on reh'g).

■ In our review, we will consider in our analysis the nonexclusive list of factors that the Texas Court of Criminal Appeals has characterized as factors that weigh against the legitimacy of a race-neutral explanation. These factors are:

1. The reason given for the peremptory challenge is not related to the facts of the case;

2. there was a lack of questioning to the challenged juror or a lack of meaningful questions;

3. Disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck;

4. Disparate examination of members of the venire, i.e., questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and

5. an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

*Id.* at 713–14.

Henderson is African–American. The State struck all four African–Americans from the venire. The struck veniremembers included Jennie Howard, veniremember number twenty-five; Barbara Pipkins, veniremember number twenty-eight; Clara M. Warren, veniremember number twenty-nine; and Willia V.P. Johnson, veniremember number thirty-three.

At the hearing held in connection with Henderson's *Batson* motion, the prosecutor testified that she struck Jennie Howard because she had filled out her information sheet up until question four, left the rest of the first page blank, filled in about half of the second page, and filled in only three questions on the third page, a page that had some very crucial questions. She said that she did not ask her why she had not filled in the blanks. Additionally, the prosecutor said that Ms. Howard seemed uncertain about the difference between a jury and a grand jury.

The prosecutor testified that she struck Barbara Pipkins because she had a masters degree in social work, because she used the word "incorporated" with her sorority, because she was a liberal, and because she believed in rehabilitation. The prosecutor said that because her aunt had a masters degree in social work it caused her to have a prejudice against people who had such a degree. She also indicated that the people

she had heard refer to their fraternity or sorority as incorporated had a tendency to be brainwashed by that fraternity or sorority.

The prosecutor said she struck Clara Warren because Ms. Warren stopped filling out her questionnaire after question seventeen, even though several of the questions called for "yes" or "no" answers. She said that she felt that if the juror could not understand the judge's information sheet she might not be able to follow what was going on in the courtroom.

She said that she did not ask the jurors that she struck whether they did not fill out their forms because they were not familiar enough with the language to be able to read and write the language. She said that she struck a Caucasian lady on the panel who did not fill out her questionnaire. She said that she had made the decision to strike the three African–American and the Caucasian veniremembers who had not completely filled out their forms before she had seen the panel and learned that three of the four were African–Americans.

On further questioning by her co-counsel, the prosecutor recalled that Ms. Howard had been twenty-five or thirty minutes late that morning, and that her investigator had noticed that Ms. Johnson, who was seventy-seven years of age, was unable to hear.

■ We first note that one of the veniremembers, Willia V.P. Johnson, was too far down on the venire list to have sat on the jury in any event. Consequently, Henderson could not have suffered any harm by the State's use of one of its peremptory challenges against her. We also note that the prosecutor stated that she was aware that Ms. Johnson was unable to hear and that she left a large portion of her jury questionnaire blank. On appeal, Henderson contends that a Caucasian veniremember, number fourteen, also did not complete her form, yet was not struck. Upon comparison, it appears to us that this veniremember's form is more nearly fully completed than Ms. Johnson's.

■ With respect to the other two prospective veniremembers who did not completely fill out their forms, we have examined the jury forms and find that these two veniremembers left out their answers to a significant number of the questions, more than those omitted by the Caucasian veniremember. Henderson complains that the prosecution failed to ask the veniremembers why they had failed to fill in the blanks, suggesting that perhaps the veniremembers might just have been unfamiliar with the language. Henderson suggests no reason for not filling out extensive portions of the jury form other than uncooperativeness, mental illness, or difficulties in the use of the English language, each of which constitutes a reasonable non-racial basis for a peremptory strike.

■ As we have noted, two of the prosecutor's bases for striking veniremember Pipkins was because she was a social worker and because she used the word "Inc." in connection with her sorority. Henderson is correct in stating that these reasons appear to be based upon group bias that was not shown to be relevant to this particular case. However, the prosecutor also indicated that she was striking this juror because she was a liberal who believed in rehabilitation. Our examination of the juror questionnaires shows that Pipkins was the only veniremember who clearly indicated that she was both a liberal and that she believed that rehabilitation should have the highest priority when considering punishment, as opposed to deterrence or punishment for punishment's sake. As to this basis the record reflects no disparate treatment nor group bias not shown to be relevant to this particular case.

Based on the totality of this record we hold that the trial court's decision was not clearly erroneous. We overrule point of error number one.

Henderson urges in point of error number two that the trial court erred in allowing the State to admit into evidence, through the investigating officer, the photographic lineup used in the eyewitness identification of him by a witness because

it was impermissible bolstering of the eye-witness's testimony.

■ After an investigating officer identified the photo spread from which a witness identified Henderson and testified that the witness had identified a person in the spread, the photo spread was admitted into evidence. The officer did not testify that the witness had identified Henderson from the photo spread.

■ We first consider whether such testimony constituted bolstering. We hold that it does. *Washington v. State*, 771 S.W.2d 537, 545 (Tex.Crim.App.1989) (en banc). However, we agree with the First District Court of Appeals that the adoption of Rule 801(e)(1)(C) of the Texas Rules of Criminal Evidence has eliminated bolstering as a valid objection by holding that such testimony is no longer hearsay. *See Thomas v. State*, 811 S.W.2d 201, 208 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd). Furthermore, in view of the eyewitness's positive and unequivocal in-court identification of Henderson, we hold beyond a reasonable doubt that the evidence did not contribute to Henderson's conviction.

■ Henderson argues that we may not determine that the admission of the photo was harmless because a juror later testified that the jury had discussed that Henderson may have been in trouble before since his photo appeared to be a mug shot. We note that Henderson made no objection to the photo having to do with the appearance of Henderson's photo as a mug shot, and, in fact, the photos were mounted in such a way as to obscure slates underneath the pictures showing dates and times. We hold that by not making an objection as to Henderson's photo appearing to be a mug shot, Henderson failed to preserve error as to any harm resulting from the admission of the photo on that account. We overrule point of error number two.

The judgment is affirmed.