**Richard Dale POULLARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–90–00870–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 11, 1992.

---

Richard A. Dawson, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Linda A. West, William J. Hawkins, Asst. Dist. Attys., Houston, for appellee.

Before OLIVER–PARROTT, C.J., and DUNN and WILSON, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

A jury convicted appellant of aggravated robbery and the court assessed punishment, enhanced under TEX. PENAL CODE

ANN. § 12.42(c) (Vernon Supp.1992), at confinement for 50 years. We affirm.

In his first point of error, appellant contends that the trial court erred in admitting evidence of a pretrial lineup in violation of his constitutional right to counsel. The facts relevant to this point of error are as follows: After appellant had been arrested, taken into custody, and formally charged with the offense, he was placed in a "mock lineup" with five other men. The lineup was videotaped. Neither the complainant nor any witnesses were present at the lineup. Nor was an attorney for appellant present. Appellant had not signed a waiver of counsel, and he testified at a later hearing that he had asked for an attorney to be present, although he did not remember to whom he made this request. Appellant was allowed to select his own position in the lineup, and he does not argue that the lineup was unfair or that it in any way suggested, implied, or otherwise conveyed the message that he was the suspect in the crime.

Twelve days after the robbery, the complainant viewed the videotape. She was asked to view it in silence, and was told not to feel compelled to identify anyone from the tape. After viewing the tape, she made a positive identification of appellant.

Prior to trial, appellant filed a motion to suppress the identification and asked the court for a hearing on the matter. The court conducted a hearing and overruled the motion.

At trial, the complainant was examined and cross-examined on the issue of the tape. The tape was offered into evidence by the State, and admitted over appellant's objection. At the close of the State's case, appellant again raised the issue in moving for an instructed verdict, and the court again overruled his motion.

■ We must now decide whether appellant was entitled to counsel at the making of the videotaped "mock lineup." There is no doubt that a defendant who has been formally charged is entitled to the presence of counsel at a live pretrial lineup. *United States v. Wade*, 388 U.S. 218, 237, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149 (1967);

*Gilbert v. California*, 388 U.S. 263, 272, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). It is equally clear that the presence of counsel is not required when a witness is asked to attempt to identify an offender from an array of photographs. *United States v. Ash*, 413 U.S. 300, 321, 93 S.Ct. 2568, 2579, 37 L.Ed.2d 619 (1973); *Green v. State*, 510 S.W.2d 919, 921 (Tex.Crim.App.1974).

■ An accused is entitled to counsel at any critical stage of the prosecution. *Kirby v. Illinois*, 406 U.S. 682, 690, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972); *Simmons v. United States*, 390 U.S. 377, 383, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247 (1968). The answer to the question before us therefore turns on whether the making of the videotaped "mock lineup" was a critical stage of the prosecution of appellant. *See McMillian v. State*, 83 Wis.2d 239, 265 N.W.2d 553, 556 (1978). A pretrial proceeding is a critical stage if

the presence of [ ] counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself.

*Wade*, 388 U.S. at 227, 87 S.Ct. at 1932.

■ In determining whether the post-charge making of the videotaped "mock lineup" was a critical stage and therefore required the presence of counsel, we consider the concerns expressed by the Supreme Court about the characteristics of a post-charge *live* lineup. These concerns were set out in *Wade*, wherein the Court observed that "any protestations by the suspect of the fairness of the lineup made at trial are likely to be in vain; the jury's choice is between the accused's unsupported version and that of the police officers present." *Id.* at 231, 87 S.Ct. at 1934. "In short," wrote the Court, "*the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup* may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification." *Id.* at 231–32, 87 S.Ct. at 1934–35

(emphasis added). The Court concluded as follows:

> Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup, *which may not be capable of reconstruction at trial,* and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little doubt that for Wade the post-indictment lineup was a critical stage of the prosecution at which he was "as much entitled to such aid of counsel ... as at the trial itself." [citation omitted.]

*Id.* at 236–37, 87 S.Ct. at 1937 (emphasis added). Defense counsel is thus required at a live lineup to be the eyes and ears of the accused. *McMillian,* 265 N.W.2d at 557; *see also Wade,* 388 U.S. at 236, 87 S.Ct. at 1937.

The "capability of reconstruction" question was also at issue in *Ash,* wherein the Court held that there is no right to counsel at a photographic display conducted by a state for the purpose of allowing a witness to attempt to identify the offender. 413 U.S. at 321, 93 S.Ct. at 2579. The Court noted that "[i]f accurate reconstruction is possible ... the opportunity to cure defects at trial causes the confrontation to cease to be 'critical.'" *Id.* at 316, 93 S.Ct. at 2577. Justice Stewart, in agreeing with the Court's holding, summed it up this way:

> In short, there are few possibilities for unfair suggestiveness—and those rather blatant and easily reconstructed. Accordingly, an accused would not be foreclosed from an effective cross-examination of an identification witness simply because his counsel was not present at the photographic display. For this reason, a photographic display cannot fairly be considered a "critical stage" of the prosecution.

*Id.* at 324–25, 93 S.Ct. at 2581 (Stewart, J. concurring).

Concerns about reconstruction are far less weighty in cases where a "mock lineup" is videotaped. The accurate reconstruction of the circumstances of a photospread set up for a complainant to view depends upon the testimony of the witnesses to those circumstances. Reconstructing the arrangement of a videotaped "mock lineup," however, is of less concern; it is the actual reproduction of the event itself that the jury sees. Videotaped lineups are readily reconstructible; the videotape *is* the reconstruction.

In a videotaped lineup, the camera and microphone serve as the defendant's eyes and ears. *McMillian,* 265 N.W.2d at 557. Furthermore, such a videotape is of more effective assistance in the judicial determination of suggestiveness than the personally recalled observations of either state witnesses or defense counsel, neither of which would be as objective or retentive as the tape. Indeed, there is no more accurate method for objectively "reconstructing" an event than one which captures both the sights and sounds of the event.

We hold a defendant is not entitled to the presence of counsel when he participates in a videotaped "mock lineup," with neither the complainant nor any witnesses present, which is later shown to a complainant in an attempt to identify an offender. Such an event is not a critical stage, and counsel is therefore not required to be present. We do not address the issue of whether counsel is required to be present when the tape is *shown* to the complainant or any witnesses; that issue is not raised in this case and is therefore not before us.

We overrule point of error one.

In point of error two, appellant argues that the trial court erred in admitting, during presentation of rebuttal evidence by the State, evidence of an extraneous offense. Both the extraneous offense and the one for which appellant was tried were committed at night. Both were committed with a revolver, against a lone female victim working in a small store. Both victims were forced to crawl on their hands and knees. Both victims had their personal jewelry stolen along with money in the stores' cash registers. The offenses were committed four days apart, and the two stores were close geographically. The victim in the extraneous robbery positively identified appellant as the robber.

■ Evidence of an extraneous offense may become admissible upon a showing by the prosecution that the transaction is relevant to a material issue in the case, and that the relevancy value of the evidence outweighs its inflammatory or prejudicial potential. *Crank v. State*, 761 S.W.2d 328, 342 (Tex.Crim.App.1988), *cert. denied*, 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989); *Baize v. State*, 790 S.W.2d 63, 64 (Tex.App.–Houston [1st Dist.] 1990, pet. ref'd). The analysis is for the trial court in the first instance, and absent a clear abuse of discretion the court's decision will not be disturbed on appeal. *Crank*, 761 S.W.2d at 342; *Baize*, 790 S.W.2d at 64.

■ Appellant presented alibi evidence to the jury in the form of witnesses who testified that he was with them during the time that the offense for which appellant was tried was committed. By putting on an alibi defense, appellant placed his identity in issue. *Hines v. State*, 571 S.W.2d 322, 325 (Tex.Crim.App.1978); *Baize*, 790 S.W.2d at 64. Once appellant placed his identity in issue, the State could offer evidence of an extraneous offense to prove identity if there was some distinguishing characteristic common to both the extraneous offense and the offense for which appellant was on trial. *Chambers v. State*, 601 S.W.2d 360, 362 (Tex.Crim.App.1980); *Baize*, 790 S.W.2d at 64 n. 1.

Here, the two crimes shared several unique, distinguishing, common characteristics. The evidence was relevant to the issue of identity, and its relevancy value outweighed its potential for prejudice. *See Crank*, 761 S.W.2d at 345. The trial court did not abuse its discretion in admitting it.

We overrule point of error two.

■ In point of error three, appellant argues that he was deprived of effective assistance of counsel by his trial counsel's failure to object to improper bolstering of a State witness, by counsel's failure to object to the admission of evidence on the circumstances of appellant's arrest, and by counsel's failure to object to the jury instructions on the terms "knowingly" and "intentionally." The standard for determining whether a defendant was deprived of effective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 88 L.Ed.2d 674 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. at 2064.

■ "Bolstering" occurs when evidence is improperly used by a party to add credence or weight to some earlier unimpeached evidence offered by the same party. *Guerra v. State*, 771 S.W.2d 453, 474 (Tex.Crim.App.1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606 (1989); *Thomas v. State*, 811 S.W.2d 201, 208 (Tex.App.–Houston [1st Dist.] 1991, pet. ref'd). Bolstering a witness' identification of a defendant has historically been disallowed because the testimony was hearsay. *Id.*

■ Here, on direct examination of the complainant, the State elicited testimony that she viewed a photospread and identified appellant. On direct examination of the investigating officer, the State elicited testimony that the complainant viewed a photospread and identified appellant. Appellant's trial counsel did not object.

We considered very similar facts in *Thomas*. There, the complainant identified the defendant in court as the person he had picked out of a lineup. *Id.* After the complainant had testified, the State elicited testimony from a policeman that the complainant identified the defendant at the lineup as soon as the defendant stepped forward. *Id.* We held as follows:

> TEX.R.CRIM.EVID. 801(e)(1)(C) changed the law concerning bolstering. Rule 801(e)(1)(C) provides a statement is not hearsay and is admissible if the declarant testifies and is subject to cross-examina-

tion concerning the statement, and the statement is one of identification of a person made after perceiving him. [The complainant], the declarant, testified and was subject to cross-examination. [The complainant's] statement was one of identification of a person made after perceiving him. Under these circumstances, bolstering is no longer a valid objection. *Id.*

The same reasoning and conclusion apply here. Bolstering would not have been a valid objection to the officer's testimony, and therefore counsel was not ineffective in not making it.

■ Appellant also contends his trial counsel should have objected to evidence of appellant attempting to evade arrest and striking one of the arresting officers in the chest and arm. We disagree. The State is entitled to prove the circumstances surrounding an arrest. *Humber v. State,* 624 S.W.2d 814, 816 (Tex.App.–Houston [14th Dist.] 1981, no pet.). Counsel is not ineffective in not objecting to admissible evidence of the circumstances of a defendant's arrest. *See Id.*

■ Nor was counsel ineffective in not objecting to the trial court's definitions of "intentionally" and "knowingly" in the charge. The trial court charged the jury with the same definitions that are given in TEX.PENAL CODE ANN. § 6.03(a) and (b) (Vernon 1974). Appellant argues that, since robbery is a "result"-oriented crime, the "conduct" portions of the charge should have been deleted.

We rejected an identical argument in *Bosier v. State,* 771 S.W.2d 221 (Tex.App.–Houston [1st Dist.] 1989, pet. ref'd). There, the trial court used the same definitions that were used here. *Id.* at 225. We held that the trial court did not err in submitting the statutory definitions of "intentionally" and "knowingly" "because both definitions allow the jury to consider the nature of appellant's conduct *or* the results of his conduct." *Id.* (emphasis in original).

We decline to depart from this holding. We overrule point of error three.

We affirm the judgment of the trial court.