corley 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00135-CR







Eric Anthony Corley, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT


NO. 44,518, HONORABLE RICK MORRIS, JUDGE PRESIDING








 Appellant Eric Anthony Corley appeals from his conviction for the offense of
murder. See Tex. Penal Code Ann. § 19.02 (West 1994). A jury sentenced appellant to life
imprisonment and assessed a fine of $10,000. See Tex. Penal Code Ann. § 12.32 (West 1994). 
We will affirm the judgment of conviction.



BACKGROUND


 On May 14, 1994, Bridgette Anderson and Carl Samuels attended a dance festival
at the Harker Heights Community Center with another couple, Roberto Hilman and Sharon
Whitaker. After midnight, in the early morning hours of May 15, Bridgette and Carl walked out
of the community center to Carl's car to sit and talk for a while. Shortly thereafter, Roberto came
out of the community center, went over to the driver's side of Carl's car, leaned in through the
driver's side window and began a conversation with Carl. Bridgette got out of the car to get some
fresh air while the two men talked. While standing outside Carl's car, Bridgette noticed that
Sharon, Roberto's date, was walking back and forth in front of the community center while being
followed and harassed by Maxie Johnson.

 Bridgette called the situation to Carl and Roberto's attention. Roberto, defending
his date, exchanged heated words with Maxie. Appellant, who was standing near the community
center, heard the argument and said to Maxie: "Man, don't disrespect my uncle." (1) Appellant then
walked past Bridgette, around the passenger side of Carl's car, and fatally shot Maxie in the head
from close range.

 After the shooting, appellant, Roberto, Carl, and Bridgette left the scene of the
crime and drove to an apartment in Killeen. Roberto concocted a story about Maxie being killed
in a drive-by shooting by an unknown man in a blue car, and everyone in the group agreed to tell
the police this false story. When the Harker Heights police department began to investigate the
crime, both Bridgette and Carl gave the false story that Roberto had contrived on the night of the
murder. Soon after giving the false story to the police, Bridgette was threatened by some of
appellant's friends. Angered by the threat, Bridgette returned to the police department and told
the police the truth about the murder, implicating appellant. Before trial, Carl told the district
attorney that appellant was actually the one who murdered Maxie Johnson, recanting his original
statement to the police and confessing that he participated in the cover-up. At trial, both Bridgette
and Carl testified against appellant and told the jury the true version of the killing, denouncing
their original statements to the police.

 The jury found appellant guilty of murder and sentenced him to life imprisonment
and a ten thousand dollar fine. See Tex. Penal Code Ann. §§ 12.32, 19.02 (West 1994). In five
points of error, appellant now challenges his conviction, alleging that: 1) the trial court allowed
the State to improperly bolster two of its witnesses; 2) the evidence was factually insufficient to
support the jury's verdict; 3) the trial court allowed the prosecutor to ask a question that had
previously been asked and answered; 4) the court failed to properly answer two of the jury's
inquiries sent out during deliberations; and 5) the jury improperly considered how Texas parole
law would specifically affect appellant.



DISCUSSION


Bolstering

 In his first point of error, appellant contends that the trial court committed
reversible error by overruling his objection that the State improperly bolstered the testimony of
Bridgette Anderson and Carl Samuels. On direct examination, both Bridgette and Carl testified
that appellant killed Maxie Johnson. The prosecutor then asked both witnesses about the failed
cover-up and their participation in it. Both witnesses testified that their original statements to the
police were false and that their trial testimony was true. Appellant objected that the State was
improperly bolstering its own witnesses' testimony. The State argued that it was simply pursuing
an effective trial strategy by raising the existence of the prior inconsistent statement on direct
examination and then having the witnesses explain the inconsistency. We agree with the State's
argument.

 As the Court of Criminal Appeals has recently written:



"Bolstering" may perhaps be understood . . . to be any evidence the sole purpose
of which is to convince the factfinder that a particular witness or source of
evidence is worthy of credit, without substantively contributing "to make the
existence of [a] fact that is of consequence to the determination of the action more
or less probable than it would be without the evidence." See Tex. R. Crim. Evid.
401. Accordingly, evidence that corroborates another witness' story or enhances
inferences to be drawn from another source of evidence, in the sense that it has an
incrementally further tendency to establish a fact of consequence, should not be
considered "bolstering."



Cohn v. State, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993) (emphasis in original); see also
Hyde v. State, 869 S.W.2d 660, 663 (Tex. App.--Beaumont 1994, pet. ref'd); Jones v. State, 833
S.W.2d 634, 635 (Tex. App.--Houston [14th Dist.] 1992, pet. ref'd); Henderson v. State, 816
S.W.2d 845, 849 (Tex. App.--Fort Worth 1991, no pet.); Thomas v. State, 811 S.W.2d 201, 208
(Tex. App.--Houston [1st Dist.] 1991, pet. ref'd).

 As a threshold matter, the State argues that a "bolstering" objection is no longer
sufficient to preserve error. See Cohn, 849 S.W.2d at 821 (Campbell J., concurring). We
disagree. The Cohn majority did note that the Rules of Criminal Evidence have superseded the
common law "bolstering" terminology. Id. at 819. However, the court implicitly held that an
objection on the basis of "bolstering" suffices to preserve error. The court noted that the
common-law prohibition against bolstering partly survives in Rules of Criminal Evidence 608(a)
and 612(c). Id. at 820. The court then analyzed a "bolstering" objection under those rules. Id.
at 820-21. Accordingly, we hold that appellant's "bolstering" objection preserved error for
review in this Court under the applicable Rules of Criminal Evidence discussed in Cohn.

 The testimony challenged by appellant was not used to "bolster" the witnesses'
credibility under the Cohn definition. By having the witnesses testify about the cover-up and then
explain that it was untrue, the prosecutor demonstrated that it was more likely that appellant had
committed the murder, thereby making more probable a disputed fact of paramount significance. 
See Tex. R. Crim. Evid. 401. The testimony did not solely show that the witnesses were
particularly credible. See Cohn, 849 S.W.2d at 819. Indeed, the testimony could reasonably be
construed as damaging the witnesses' credibility.

 Applying the pertinent Rules of Criminal Evidence discussed in Cohn, we find that
the trial court acted well within its discretion in overruling appellant's objection and permitting
the testimony. Rule 608(a) specifies the type of reputation and opinion evidence that may be used
to attack the credibility of a witness. See Tex. R. Crim. Evid. 608(a). Rule 608(a), however,
only applies to the use of opinion and reputation evidence. In the present case, the prosecutor was
not attacking or supporting the witnesses' credibility for truthfulness or untruthfulness in the form
of opinion or reputation testimony. Thus, Rule 608(a) is not applicable to this testimony. 
Similarly, Rule 612(c) only applies to prior consistent statements. See Tex. R. Crim. Evid.
612(c). In the present case, the prosecutor presented the witnesses with prior inconsistent
statements. Thus, Rule 612(c) also does not bar the challenged testimony.

 Indeed, the prosecutor's actions are specifically contemplated by Rule 612(b),
which governs the use of prior inconsistent statements. See Tex. R. Crim. Evid. 612(b). 
Additionally, the Rules of Criminal Evidence allow a party to impeach its own witness. See Tex.
R. Crim. Evid. 607. The State chose a trial strategy of eliminating the "sting" from its witnesses'
prior inconsistent statements to diminish the impact of cross-examination. In this situation, the
Rules of Criminal Evidence do not prevent the State from revealing prior inconsistent statements
given by its own witnesses. We overrule appellant's first point of error.



Factual Sufficiency

 In his second point of error, appellant contends that the evidence is factually
insufficient to support his conviction for murder. In evaluating a factual-sufficiency challenge,
we will set aside a verdict "only if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust." Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin,
1992, pet. ref'd, untimely filed). Additionally, in a factual-sufficiency review, unlike a review
of legal sufficiency, we view "all of the evidence without the prism of `in the light most favorable
to the prosecution . . . .'" Id. at 379, 381; Clewis v. State, No. 450-94, slip op. at 2 (Tex. Crim.
App. January 31, 1996).

 Appellant argues that the State's eyewitnesses, Bridgette Anderson and Carl
Samuels, completely lacked credibility because they admittedly participated in a plan to conceal
the truth about Maxie Johnson's murder. Appellant contends that, because Bridgette and Carl lied
to the police, their trial testimony should be completely disregarded. Although both Bridgette and
Carl stated that their original stories were not true, (2) their testimony at trial was consistent and
comported with the physical evidence.

 Appellant attempts to contrast the State's eyewitness testimony with that of defense
witness Huey Finley, another bystander on the night of the murder. Finley testified that he was
standing next to appellant immediately prior to the murder and that, although he did not see the
shot, he heard it and saw appellant standing against the community center wall both before and
after the shot. Additionally, Finley testified that Roberto was the closest person to Maxie at the
time of the shot and that he saw Roberto walking away from the victim immediately after the
shooting. Appellant characterizes Finley as the only credible eyewitness presented at trial. 
However, appellant concedes that the case turned on the credibility of all three eyewitnesses. Determinations of witness credibility are within the sound discretion of the trier-of-fact. See United States v. Razo-Leora, 961 F.2d 1140, 1145 (5th Cir. 1992); Lafoon v. State, 543
S.W.2d 617, 620 (Tex. Crim. App. 1976); Hudson v. State, 418 S.W.2d 813, 813 (Tex. Crim.
App. 1967); Burns v. State, 165 S.W.2d 195, 196 (Tex. Crim. App. 1942). The jury believed
the State's witnesses. We are unable to say that the jury's verdict is so contrary to the
overwhelming weight of the evidence that it is clearly wrong and unjust. We overrule appellant's
second point of error.



"Asked and Answered" Objection

 The third point of error asserts that the trial court committed reversible error in
failing to sustain defense counsel's "asked and answered" objection to the prosecutor's questions
regarding the physical location of the victim's gunshot wound. At trial, the prosecutor asked
Bridgette Anderson an ambiguous question about the exact location of the gunshot wound on
Maxie Johnson's head. Bridgette did not verbally state the location of the gunshot wound but,
during the course of her answer, pointed to the right side of her head. The prosecutor, knowing
that Maxie had been shot in the left side of his face, attempted to correct the confusion by having
Bridgette clarify exactly what she meant to convey by pointing to the right side of her face. (3) 
Defense counsel objected that the location of the gunshot wound had been "asked and answered,"
and the trial court overruled the objection. We review the trial court's ruling on such an objection
by considering whether the question's "probative value is substantially outweighed by the danger
of . . . needless presentation of cumulative testimony." Tex. R. Crim. Evid. 403. A trial court's
decision to sustain or overrule an objection to the cumulative nature of a witness' testimony is
grounds for reversal only if the court's judgment was clearly erroneous. See Lee v. State, 866
S.W.2d 298, 303 (Tex. App.--Fort Worth 1993, pet. ref'd).

 The probative value of Bridgette's testimony was high because she clarified the
exact location of Johnson's gunshot wound. Bridgette was facing the prosecutor and could have
easily been "turned around" when she pointed to her right temple. The jury needed to know
whether Bridgette actually meant that Maxie had been shot in the right side of his face or whether
she was indicating the location of Johnson's wound in "mirror image" because she was facing the
prosecutor during her testimony. If the latter, her indication that Maxie was shot in the right side
of his face would be exactly opposite of what she meant.

 The trial court's decision to allow the prosector to clarify Bridgette's testimony had
little cumulative effect, if any. Additionally, defense counsel was given ample opportunity to
cross-examine Bridgette about her testimony. On cross-examination, Bridgette clearly established
that she had mistakenly pointed to the right side of her face because she was facing the prosecutor
when he asked her the question. We are unable to conclude, based on the record before us, that
the trial court clearly erred by allowing the prosecutor to clarify Bridgette Anderson's testimony. 
We overrule appellant's third point of error.



Jury Inquiries During Deliberation

 In appellant's fourth point of error, he argues that the trial court erred in the
manner it answered two sets of written inquiries from the jury. The jury sent the trial court the
following note during deliberation on appellant's guilt or innocence: "1) We would like to see
letters from Huey to Eric; 2) Why wasn't [sic] Roberto/Sharon called to testify? and 3) Were they
subpoenaed?" The trial court informed counsel that he would answer the jury's note by explaining
that he was unable to comment upon their questions and instructing the jury to refer to the court's
charge and continue deliberating. Defense counsel objected to the trial court's response.

 The Texas Code of Criminal Procedure states:



[T]he judge shall, before argument begins, deliver to the jury . . . a written charge
distinctly setting forth the law applicable to the case; not expressing any opinion
as to the weight of the evidence, not summing up the testimony, discussing the facts
or using any argument in his charge calculated to arouse the sympathy or excite
the passions of the jury.



Tex. Code Crim. Proc. Ann. art. 36.14 (West 1981 & Supp. 1996) (emphasis added). If the jury
asks an improper question, the judge must answer by referring the jury to the court's charge. See
Gambin v. State, 476 S.W.2d 18, 20 (Tex. Crim. App. 1972).

 In the present case, if the trial court had answered any one of the jury's requests,
it would have commented on the evidence in violation of article 36.14. Answering the jury's first
request to see letters from appellant to Huey Finley would have been a comment on the evidence
because the trial court would have had to inform the jury that no such letters existed in the
evidence. Answering the jury's second inquiry would have violated article 36.14 by forcing the
trial court to speculate why Roberto Hilman and Sharon Whitaker had not been called as
witnesses. Likewise, an answer to the jury's third question could have led the jury to draw
improper inferences from the fact that Roberto and Sharon were or were not subpoenaed.

 Appellant's attorney did not deny that answering the jury's questions would
constitute a comment on the evidence. Instead, he suggested that the trial court select portions
of the witnesses' testimony to re-read to the jury even though the jury had not so requested. 
However, the jury's questions asked for information that did not exist in any of the witnesses'
testimony. The trial court answered the jury's questions in the only manner permitted by article
36.14. Therefore, the trial court's response to the jury's first note was not in error.

 In the second part of appellant's fourth point of error, he contends that the trial
court erred by re-reading too much of Huey Finley's testimony in response to a second jury
inquiry. The jury sent the trial court a note indicating a dispute over Huey Finley's testimony
about the locations of appellant and Roberto Hilman at the time of the shooting. The trial court
selected a portion of Huey's testimony to read in response to the request. Appellant must show
a clear abuse of discretion on the part of the trial court in re-reading parts of disputed testimony. 
See Brown v. State, 870 S.W.2d 53, 55-56 (Tex. Crim. App. 1994). After reviewing the portion
of Huey Finley's testimony that the trial court re-read to the jury, we are unable to say that the
trial court clearly abused its discretion. On the contrary, the testimony that the trial court read
was necessary to adequately answer the jury's inquiry. We overrule appellant's fourth point of
error.



The Jury's Consideration of Texas Parole Law

 In his final point of error, appellant contends that the jury improperly considered
the manner in which the parole law would apply to him. See Tex. Code Crim. Proc. Ann. art.
37.07 (West 1981 & Supp. 1996). After the jury had deliberated for approximately three hours
in the punishment stage of the trial, it sent a note to the trial judge asking: "1) What is the
difference between life and 99 years?" and "2) If given life could he be eligible for parole in 30
years or less?" The court answered the question by stating: "Ladies and Gentlemen of the jury,
I have received your note which is attached hereto. I cannot answer your questions. Please refer
to the Court's charge and continue your deliberations." Approximately an hour later, the jury
returned with a verdict for the maximum possible penalty.

 Although the jury can be instructed on the law of parole, it must also be instructed
not to consider how parole will specifically affect the defendant. See Tex. Code Crim. Proc. Ann.
art. 37.07, § 4(a) (West 1981 & Supp. 1996). The Court of Criminal Appeals has outlined the
five requirements necessary to show that a jury committed reversible error in considering how
parole would affect a particular defendant:



1) a misstatement of law; 


2) asserted as a fact; 


3) by one professing to know the law; 


4) which is relied upon by other jurors; 


5) who for that reason changed their vote to a harsher punishment.



Buentello v. State, 826 S.W.2d 610, 611 (Tex. Crim. App. 1992) (citing Sneed v. State, 670
S.W.2d 262, 266 (Tex. Crim. App. 1984)).

 Appellant has waived any error by failing to object or move for a mistrial. See
Tex. R. App. P. 52(a). In any event, appellant failed to develop evidence evaluating the jury's
alleged misconduct because he failed to move for a new trial and request a hearing on the motion. 
Legally, appellant was not required to make a motion for new trial to preserve error. See Tex.
R. App. P. 52(c). As a practical matter, however, without any evidence other than the jury's
note, appellant cannot carry his burden of showing that the jury's verdict was affected by an
improper consideration of parole law. DeBlanc v. State, 799 S.W.2d 701, 709 (Tex. Crim. App.
1990); J.R.W. v. State, 879 S.W.2d 254, 257 (Tex. App.--Dallas 1994, no pet.). We overrule
appellant's final point of error.



CONCLUSION


 We have overruled each of appellant's points of error. Consequently, we affirm
the judgment of conviction.





 


 Mack Kidd, Justice


Before Justices Powers, Jones and Kidd


Affirmed


Filed: April 17, 1996


Do Not Publish

1. [1]  There is no evidence that appellant and Roberto were in any way related, but Roberto
commonly referred to appellant as his nephew.
2. [2]  Bridgette and Carl testified that they were willing to lie about how Maxie was murdered
because they were afraid of appellant and his friends.
3. [3]  At trial, when the prosecutor was conducting the direct examination of Bridgette Anderson,
the following dialog took place:


PROSECUTOR: What side of the face of the man that was killed did Eric Corley
shot [sic] him?

WITNESS: Okay. He's standing like this. This side. (Indicating right
temple.)

PROSECUTOR: Okay. Now you're standing here?

WITNESS: I'm standing here.

PROSECUTOR: And the man that is shot is standing back looking towards Roberto
Hilman?

WITNESS: (Nods affirmatively.)


* * * *



PROSECUTOR: -- and you mention that you were over here to this side --

WITNESS: On the passenger's side.

PROSECUTOR: -- and that Eric Corley came past you --

WITNESS: Yes, sir.

PROSECUTOR: -- came around the front of the car and would have come to the
left side of this man's face?

WITNESS: Yes, sir.

PROSECUTOR: Okay. And is that the side of the face that was shot by and
injured by the Defendant, Eric Corley?

WITNESS: Yes, sir.


 MR. JOHNSON: Objection, your Honor. She's asked and
answered that question.


 THE COURT: Overruled.



difference between life and 99 years?" and "2) If given life could he be eligible for parole in 30
years or less?" The court answered the question by stating: "Ladies and Gentlemen of the jury,
I have received your note which is attached hereto. I cannot answer your questions. Please refer
to the Court's charge and continue your deliberations." Approximately an hour later, the jury
returned with a verdict for the maximum possible penalty.

 Although the jury can be instructed on the law of parole, it must also be instructed
not to consider how parole will specifically affect the defendant. See Tex. Code Crim. Proc. Ann.
art. 37.07, § 4(a) (West 1981 & Supp. 1996). The Court of Criminal Appeals has outlined the
five requirements necessary to show that a jury committed reversible error in considering how
parole would affect a particular defendant:



1) a misstatement of law; 


2) asserted as a fact; 


3) by one professing to know the law; 


4) which is relied upon by other jurors; 


5) who for that reason changed their vote to a harsher punishment.



Buentello v. State, 826 S.W.2d 610, 611 (Tex. Crim. App. 1992) (citing Sneed v. State, 670
S.W.2d 262, 266 (Tex. Crim. App. 1984)).

 Appellant has waived any error by failing to object or move for a mistrial. See
Tex. R. App. P. 52(a). In any event, appellant failed to develop evidence evaluating the jury's
alleged misconduct because he failed to move for a new trial and request a hearing on the motion. 
Legally, appellant was not required to make a motion for new trial to preserve error. See Tex.
R. App. P. 52(c). As a practical matter, however, without any evidence other than the jury's
note, appellant cannot carry his burden of showing that the jury's verdict was affected by an
improper consideration of parole law. DeBlanc v. State, 799 S.W.2d 701, 709 (Tex. Crim. App.
1990); J.R.W. v. State, 879 S.W.2d 254, 257 (Tex. App.--Dallas 1994, no pet.). We overrule
appellant's final point of error.



CONCLUSION


 We have overruled each of appellant's points of error. Consequently, we affirm
the judgment of conviction.





 


 Mack Kidd, Justice


Before Justices Powers, Jones and Kidd


Affirmed


Filed: April 17, 1996


Do Not Publish

1. [1]  There is no evidence that appellant and Roberto were in any way related, but Roberto
commonly referred to appellant as his nephew.
2. [2]  Bridgette and Carl testified that they were willing to lie about how Maxie was murdered
because they were afraid of appellant and his friends.
3. [3]  At trial, when the prosecutor was conducting the direct examination of Bridgette Anderson,
the following dialog took place:


PROSECUTOR: What side of the face of the man that was killed did Eric Corley
shot [sic] him?

WITNESS: Okay. He's standing like this. This side. (Indicating right
temple.)

PROSECUTOR: Okay. Now you're standing here?

WITNESS: I'm standing here.

PROSECUTOR: And the man that is shot is standing back looking towards Robe